# GUSTAVENSON v. STATE.

INFORMATION, VERIFICATION OF—FAILURE OF CLERK TO ATTACH SEAL
TO JURAT—JURISDICTIONAL DEFECT—INFORMATION, SUFFICIENCY
OF—IDEM SONANS—VERDICT, IMPEACHMENT OF—JURY, MISCON-
DUCT OF—INSTRUCTIONS—INTOXICATION AS EXCUSE FOR CRIME—
HOMICIDE—MURDER IN SECOND DEGREE—MANSLAUGHTER—EVI-
DENCE—BURDEN OF PROOF—HARMLESS ERROR—APPEAL AND ERROR.

1. Courts take judicial notice of the names and signatures of
   their officers.

2. Although it is the duty of the Clerk of the District Court to
   attach the seal of court to all instruments signed in his of-
   ficial capacity, his failure to attach the same to a jurat certify-
   ing to the verification of a criminal information filed in such
   court does not render the verification void, where, at least, the
   legality of the. defendant's arrest is not in issue under section
   four of the bill of rights.

3. The failure of the clerk of court to attach the seal of court
   to a jurat certifying to the verification of a criminal informa-
   tion is not a jurisdictional defect, but a mere irregularity, that
   is waived unless seasonably objected to by motion to quash or
   other proper proceeding.

4. Where an information for murder charges that the defendant
   did "unlawfully, wilfully, feloniously, purposely and with pre-
   meditated malice kill and murder" the deceased, it is sufficient;
   notwithstanding that such general allegation is followed by an
   imperfect statement of the means and manner of the killing;
   since the statute authorizes a brief statement of that crime
   without alleging the manner in which or the means by which
   death was caused, and provides that no information shall be
   deemed invalid, or the proceedings affected, on account of
   surplusage or redundant allegations, where sufficient is al-
   leged to indicate the crime and person charged.

5. Where an information for murder charges that defendant
   did "unlawfully, wilfully, feloniously, purposely and with pre-
   meditated malice kill and murder" the deceased, which is fol-
   lowed by an imperfect and ungrammatical attempt to show the
   manner and means of the killing, alleging nothing accurately
   but that defendant discharged a pistol; the information being
   sufficient because of the general charge of murder in the stat-
   utory form, and the evidence tending to show that defendant
   shot and killed the deceased with a pistol, it is held that there
   is no misleading allegation in the information, and no ground
   for the claim of variance in proof.

6. Giving the name of the deceased in the information variously as "Larson" and "Larsén" does not constitute a fatal repugnancy, since the two spellings are within the rule of *idem sonans;* and the defendant is held not to have been misled or prejudiced thereby.

7. Under the statute providing that no information shall be deemed invalid for omitting to state the time when the offense was committed, nor for stating the time imperfectly, where time is not of the essence of the offense, the use of the expression "on or about" a certain day in stating the time of committing a murder charged in an information will not vitiate it.

8. The rule that the testimony of a juror cannot be received to impeach the verdict in which he has concurred, and that his unsworn statements repeated as hearsay in the affidavit of a third person must be rejected, applied where an affidavit of the attorney for the defendant in a criminal case, attached to a motion for new trial, stated that some of the jurors informed affiant that a copy of the Revised Statutes had been taken into the jury room by a juror that they might read the law relating to homicide and the punishment inflicted under the different degrees.

9. The fact that a copy of the Revised Statutes was found in the jury room on the morning following the return of the verdict, without proof of its having been read or consulted by the jury in reaching a verdict, is insufficient to vitiate the verdict.

10. Even should it be apparent that the jury improperly allowed a consideration of the punishment inflicted by law upon different degrees of homicide to influence the determination of a verdict, the latter will not be set aside on that ground, where the verdict is sustained by the evidence.

11. On a trial for murder, resulting from the use of a deadly weapon, defendant having requested an instruction to the effect that, if defendant's mind was so affected from the combined effects of previous drinking and blows on his head immediately preceding the shooting, he was incapable to form an intent and did not know what he was doing, the jury should acquit him, it was not error of which defendant could complain for the court to modify the instruction by stating that it applied only to murder in the first and second degrees, and not to manslaughter. But the principle stated in the instruction should not have been applied to murder in the second degree.

12. To constitute manslaughter, by our statute, it is not neces-sary to prove premeditation or a deliberate intent to kill, or any other specific intent.

13. When a homicide results from the use of a deadly weapon, intoxication is a mere circumstance to be considered in determining whether premeditation was present or absent. What constitutes murder in the second degree by a sober man is equally murder in the second degree if committed by a drunken man, even though the intoxication is so extreme as to make a person unconscious of what he is doing or to create a temporary insanity.

14. Upon a charge of murder in the first degree the fact of intoxication of the accused is relevant and material as tending to show that the killing was not premeditated; and if it appears that he was so drunk as to be incapable of premeditation, or of forming a deliberate intent, and there is no evidence of his having premeditated the crime prior to becoming intoxicated, the offense of murder in the first degree will not be established.

15. From the fact that drunkenness is produced by the voluntary act of the person, from considerations of public policy, it is an exception to the rule that insanity is a sufficient defense for crime.

16. It is never incumbent upon a defendant accused of crime to prove any defense beyond all reasonable doubt.

17. An objection to an instruction not presented to the trial court by the motion for new trial held not to be before the Supreme Court as a ground for the reversal of the judgment.

18. It is generally improper in an instruction to call special attention, by way of argument, to particular portions of the evidence; but where it has been done it will not work a reversal unless it appears that injury resulted.

19. In an instruction in a murder case on the subject of the intoxication of the defendant, the jury were informed that if they should find that the defendant, immediately before the shooting, arose from the ground quickly in response to the call of an alleged confederate, and began to fire in the direction of the deceased, they might consider those facts as showing that defendant knew right from wrong, and was in a sane condition. *Held*, that the reference to said evidence was harmless, since defendant was not convicted of murder in the first degree, and the question of his intoxication was pertinent only as to that crime.

20. Where the evidence was clear that defendant shot the de-
ceased, and the circumstances under which he did it, and there
were no disputed questions of fact to be solved by an ex-
amination of the pistol or bullets with which the shooting
was done, or the nature of the wounds inflicted, it was not
prejudicial error, if any, to admit in evidence a pistol found
the day following the killing, which had occurred at night,
fifteen feet from where the shooting occurred, having five
chambers, each being empty; the evidence showing that de-
fendant fired five times, that no other member of the party had
a pistol, and there being no other circumstances to weaken the
probability that it was the weapon used.

21. The evidence considered and held sufficient to sustain the
verdict of murder in the second degree.

[Decided May 14, 1902.]

ERROR to the District Court, Albany County, HON.
CHARLES W. BRAMEL, Judge.

Alfred Gustavenson, having been convicted of murder in
the second degree, prosecuted error. The facts are stated in
the briefs and opinion.

*Groesbeck & Carpenter*, for plaintiff in error.

The verification to the information cannot be dispensed
with, and without the seal of the officer the effect is the same
as no verification, and the defect is jurisdictional. (R. S.,
Secs. 5268, 4295, 3303, 3429; Starr v. U. S., 153 U. S., 614;
Rosenstein v. State, 9 Ind. App., 290; Robertson v. State, 25
Tex. App., 529; Mican v. State (Tex.), 19 S. W., 762; Gates
v. People, 11 Colo., 292; Reed v. Cates, 11 id., 527; Miller v.
State, 122 Ind., 356.)

The information is not sufficient to constitute an offense.
The conclusion of the information would have been suf-
ficient had it alleged the date of the homicide, and the open-
ing clause would have been sufficient under the statute, had
it omitted the words "on or about." But it is clear that the
prosecuting officer did not rely upon the statutory short
form. (R. S., Sec. 5303.)

The information is defective in this: (1) It charges an
assault upon Louis Larsen (not Larson) with a pistol, and

then charges the killing of one Louis Larson (not Larsen) ; (2) it does not charge that the pistol was shot off or discharged to, at, towards or against either Louis Larsen or Louis Larson. (3) If the information charges anything, it alleges that Larson was struck with leaden balls from a revolver loaded with powder and ball (which means one ball), and was thereby mortally wounded. The pistol, the assault and the discharge of the pistol are not connected with the striking or wounding. (4) There is no direct charge that the deceased was killed and murdered by the assault, but, on the contrary, the information negatives that idea. (5) The information charges that the death of Larson (not Larsen) occurred "on or about" the 19th day of October, A. D. 1900, and does not allege that it occurred on a day certain.

(1) The names Larsen and Larson are not within the rule of *idem sonans,* and are materially variant in sound. (16 Ency. of Law (1st Ed.), 125.) (2) It must appear by the indictment (information) in what manner the deceased came to his death. Thus an indictment charging the killing by "firing a large sized Colt's revolving pistol, loaded with gun powder and leaden balls," without alleging that the balls were shot against and into the deceased, is palpably insufficient. (Gillett on Crim. Law., Sec. 514; Shepherd v. State, 54 Ind., 25.) (3) The charge that Larson was struck with leaden balls, whereby he was mortally wounded, and of which he afterwards died, is an absurdity. At any rate, the charge in the information to that effect is fatally variant from the proof. (4) The deceased must be killed and murdered by the assault and from the effects of it, and this is not charged. (5) In some jurisdictions it is sufficient to charge the time as on or about a day certain, although in others it is deemed to be insufficient. (10 Ency. Pl. & Pr., 516; 10 Ency. Pl. & Pr., 114-126-161.)

These defects in the information are believed to be fatal, and are not cured by Sections 5301 to 5303 of the Revised Statutes of Wyoming. The prosecution having elected to

draw an information setting forth the manner and means of the death of the deceased, is bound by any fatal defect therein, or by any defect therein which is at variance with the proof.  Furthermore, the information is so defective as to be void and was not cured by trial or verdict or by failure to take advantage of the defects by motion to quash or by demurrer.  (Jewell v. Territory (Okla.), 43 Pac., 1075; Holt v. Territory (Okla.), 43 Pac., 1083; Schaeffer v. State, 22 Neb., 557.)

It is contended that if the defendant could have been convicted of any offense, he should have been found guilty of manslaughter.

The homicide was committed after dark and about nine o'clock p. m., when the deceased, defendant and five others were returning to their work on the grade from Laramie, Wyoming, and Larson was shot at a place about one and one-half miles from that city.  The parties had gone to Laramie to attend a funeral, but defendant, being intoxicated, did not attend the funeral.  There is absolutely no showing of any malice, grudge, hatred or ill will on the part of the defendant towards the deceased.  All of the parties present at the homicide had been drinking heavily, and Oleson, one of the principal witnesses for the prosecution, was probably the drunkest of all, according to the evidence. Defendant, Oleson and Baxtrom were sitting on the front seat of the wagon and the others were in the rear of the wagon.  Defendant and Oleson quarreled, defendant calling Oleson vile names.  This altercation resulted in Oleson's striking defendant.  These two men left the wagon, followed shortly by nearly all of the others, including the deceased.  According to the statement of the witnesses for the prosecution, Baxtrom tried to hit or did hit Oleson with a board.  The evidence is conflicting as to whether Oleson assaulted the defendant after they had left the wagon.  At any rate, there was a scuffle between Oleson and Baxtrom, the latter being on top of the former.  Larson, the deceased, attempted to separate Oleson and Baxtrom, and the latter

called upon the defendant for aid. Defendant, who had been lying on the ground, arose and fired, wounding Larson. Nearly all of the others ran back to Laramie, leaving Baxtrom, Larson, the wounded man, defendant and one other. Baxtrom came into town with the wounded man in the wagon. Defendant was found some time after during the same night by the sheriff, who went to arrest him, lying in the road, undoubtedly overcome by drink and without sense or physical ability to escape or to move. Defendant asked the sheriff if he was arrested for being drunk.

Defendant testified on the trial that he was drunk and had been intoxicated during the day and did not know what he was doing. He claims that just previous to the shooting he was badly beaten by Oleson, and there is strong evidence going to show this. An attempt was made to contradict his testimony as to his injuries, but some of the witnesses for the prosecution show that his injuries were not received in a fight on the same day prior to the homicide, as is claimed by others who attempted to account for the appearance of blows upon his face. That defendant was a very drunken man, and that the whole party was intoxicated, cannot be controverted. There is no evidence to show that the defendant had any ill feeling toward Larson, the deceased, at the time or towards Oleson, except just previous to the shooting, and there is no evidence showing that the defendant became voluntarily drunk for the purpose of killing someone to satisfy a grudge. The parties were hard working men, and were associated together upon the same work on the railroad grade. The whole affair was simply a drunken row. Considered in the light of our law, a conviction for manslaughter, and no higher crime, may have been warranted by the evidence. If the defendant knew what he was doing, as the prosecution claims, he was lying on the ground and responded to the call of Baxtrom, who had aided him in the melee. In this view of the case there was a sudden and sharp quarrel, and the deceased was killed in the sudden heat of passion, evoked by the preceding encounter

between him and Oleson while he was trying to protect his comrade, who had just before aided him. The theory of the defense was evidently that the defendant was so drunk that he did not know what he was doing. In either view of the case, the mind of the defendant was not in a condition to form a specific intent to take life, and he was not instigated by malice at the time, acting as he did on the impulse of the moment and upon a sudden heat of passion. It is difficult, even impossible, to glean from the evidence that the killing was done "purposely and maliciously," as is required to support a conviction for murder in the second degree.

On a prosecution for murder, wherever a circumstance leading up to the killing appears from the evidence, an instruction that, if deceased was purposely killed by the use of a deadly weapon, "malice is to be presumed," unless this absence is shown, is erroneous, as raising a presumption of malice from one fact alone in the case, when there are also other facts in evidence on which the jury's opinion as to the presence of malice should be based. (Trumble v. Territory, 3 Wyo., 280.) Malice is by no means conclusively implied by the use of a deadly weapon; and the better opinion is this, the fact of using a deadly weapon casts upon the defendant no *onus* of proof, but that if upon the whole evidence there is a reasonable doubt whether malice entered into the act, he must be acquitted of murder. (Gillett Crim. Law, Sec. 494; Clemm v. State, 31 Ind., 480; 2 Bish. Crim. Pro., Secs. 619-622.) The following portion of an instruction of the court given of its own motion was erroneous: "And where the fact of killing purposely by the use of a deadly weapon is proved, malice is to be presumed, unless it appears from all of the evidence in the case that the killing was without malice, or was justifiable or excusable." This instruction thrusts the *onus* upon the defendant, and is not the law. This portion of the instructions was excepted to, but was not preserved in the motion for a new trial. However, it had its weight with the jury, and should be considered on a review of the evidence.

The misconduct of the jury is the ground of complaint in the twelfth assignment of error. This ground is supported by the affidavit of M. C. Jahren, the sole attorney for the defendant at the trial. No other affidavit or evidence was offered on this point, as the bill of exceptions shows. This affidavit stands alone and uncontradicted. It is made by an officer of the court, a reputable attorney, and its statements, which are not disputed, are entitled to great weight. This action of the jury was undoubtedly prejudicial to the defendant. It may readily be understood why the jury desired to read the statutes. The crime of murder in the second degree is punishable by imprisonment in the penitentiary not less than twenty years, or during life. If the punishment had been imprisonment for life, it is quite clear that the jury would have found the defendant guilty of manslaughter.

Information to the jurors in regard to the law of a case should be furnished in open court, and it is generally improper to allow them to have law books for the purpose of independent research. The jury should not have consulted the statutes. They took them against the express orders of the court conveyed to them in an instruction, and it appears that the statute was consulted by and aided the jury in making up their verdict against the law and the instructions of the court. (17 Ency. of Law (2nd Ed.), 1247, and cases cited in note five.)

The finding of the revolver near where the defendant was found does not connect him with it. It was at least fifteen or twenty feet from where he stood at the time of the shooting, and it is not identified as his revolver. While it may be true that the facts of shooting, or the guilt or innocence of the defendant, may not rest upon the finding of the revolver, yet the crime is charged specifically in the information as having been committed by shooting, or is intended to be so charged, and the testimony, if competent, would have been on that point. It is difficult to tell what weight the jury attached to this testimony, but every presumption in the admission of hearsay testimony, or of evidence of doubtful competency, is that it was prejudicial.

Why should not the instruction as to intoxication, which bears upon the question of the intention of the defendant, apply to manslaughter, as well as to the two degrees of murder? Is the ingredient of intent lacking in manslaughter? Certainly not. The element which is lacking in voluntary manslaughter, but which is present in murder is *malice,* and not *intent.* The killing in murder in the first degree must be done "purposely and with premeditated malice." (Rev. St., Sec. 4950.) The instructions of the court on murder in the first degree appear to us to be faulty and erroneous, but as the defendant was not convicted of that crime, such error was not prejudicial. In murder in the second degree the killing must be done "purposely and maliciously, but without premeditation." (Rev. St., Sec. 4953.) The following is our statutory definition of manslaughter: "Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter." (Rev. St., Sec. 4954.)

Here are defined two degrees of manslaughter, voluntary and involuntary. Voluntary manslaughter possesses the common element of murder in both of its degrees—the intention to kill—but it is distinguished from these crimes by an absence of malice, and, of course, premeditation.

Although the statute adds "upon a sudden heat," it is only in the application of the definition to a given case that this element must be made use of, for there could be no such thing as an unlawful intentional killing without malice, unless it was done upon a sudden heat. This mitigating fact reduces the crime to manslaughter. Involuntary manslaughter lacks all of the elements of murder except death. (Gillett Crim. Law, Sec. 503, p. 404; Dennison v. State, 13 Ind., 510; Murphy v. State, 31 Ind., 511; Bruner v. State, 58 Ind., 159; Adams v. State, 65 Ind., 565; State v. Lay, 93 Ind., 341; State v. Johnson, 102 Ind., 247; Dukes v.

State, 11 Ind., 557; Fahnestock v. State, 23 Ind., 231; Brantley v. State, 61 Pac., 139.)

These definitions and distinctions in murder of the two degrees and voluntary manslaughter is in line with the decisions of the Indiana Supreme Court on statutes of which ours is a literal copy, and these cases settle beyond controversy that intent enters into voluntary manslaughter, as well as into murder of the two degrees.

It follows that the instruction as modified by the court was erroneous, because our statute provides, "where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury, as bearing upon the question of intention." (Rev. St., Sec. 5369; Gillett on Crim. Law, Sec. 499; Gillooley v. State, 58 Ind., 182; Smurr v. State, 88 Ind., 504; People v. Eastwood, 14 N. Y., 565; Pigman v. State, 14 O., 555; State v. Schingen, 20 Wis., 79; U. S. v. Roudenbush, 1 Bald., 514; State v. Garvey, 11 Min., 154; Swan v. State, 4 Humph., 136; Haile v. State, 11 Humph., 154; Com. v. Jones, 1 Leigh, 612; Mooney v. State, 33 Ala., 419; Ex-Parte Halpine, 30 Ind., 254.)

It is not incumbent upon the defendant to show beyond a reasonable doubt his insanity, where that is his defense, or his drunkenness when that is relied on at the time of the commission of the alleged offense to the extent that he was insane or bereft wholly of reason. The farthest any court has gone on the question of insanity is to hold that the defendant must establish his insanity by a preponderance of the evidence.

*J. A. Van Orsdel*, Attorney General, for the State.

The failure of the clerk to attach the seal is not jurisdictional. Neither did it so prejudice the rights of the defendant as to warrant a reversal. Absence of the seal of the clerk is a defect appearing on the face of the information, and should be taken advantage of by motion to quash. (R. S., Sec. 5322; Miller v. State, 122 Ind., 355; Qualter v.

State, 120 Ind., 92; Nichols v. State, 127 Ind., 406; Rosenstein v. State (Ind.), 36 N. E., 652.)

The second objection raised by counsel, which they term jurisdictional, is that the information in this case is not sufficient in law, and does not state facts sufficient to constitute an offense punishable by the laws of the State. We admit that where the pleader chooses the common law form of indictment he is bound to prove all of the allegations set forth in the indictment, but the information here is sufficient in law to sustain a conviction, and we shall consider briefly the objections raised by counsel for plaintiff in error in their brief. Misnomer cannot be raised first upon appeal. (Ency. of Law (1st Ed.), 129; Travers v. R. R. Co., 4 Abb. App., 422; Dawson v. State, 33 Tex., 491.) The plea in abatement, or similar objection for misnomer, must disclose the defendant's true name. (Bliss Code Pleadings, Sec. 146a; R. R. Co. v. Hall, 12 Bush, 132; Union Bank v. Tillard, 26 Md., 446.) By pleading to the information the defendant admits his name as laid therein and is estopped from pleading misnomer. (Mayo v. State, 7 Tex. App., 342; Musquez v. State, 41 Tex., 226.) In this State it is sufficient to charge the commission of the offense on or about a certain date. (R. S., 5301.) The information charges an assault by the defendant upon the deceased with a revolver loaded with powder and ball, and by shooting and discharging the revolver, and striking deceased with said leaden ball, inflicting in and on the body of deceased a mortal wound, from which he died. Though not drawn in the exact language usually employed in common law indictments charging murder by shooting, there is no serious defect in this information. The information charges consecutively the assault, the instrument, the wounding, the death. These are the necessary elements at common law to charge a homicide. It is clear that if any defects exist in this information arising from the peculiar manner in which it is drawn, they are not such defects as to render the entire proceeding void, but are such as should have been taken advantage of by the proper motion.

The defendant failing to so take advantage, and pleading to the information, has waived any such defects.

Counsel have made numerous assignments of error, and discussed a number of points which are claimed to be reversible error, that were not raised or set forth in the motion for a new trial in the District Court. The consideration of all such points we have ignored, and we rely upon the well established rule that an appellate court will consider only the points raised in the motion for a new trial, and which have been presented to the District Court. (Miller v. State, 3 Wyo., 657; 29 Pac., 136; Casteel v. State, 62 Pac., 348; Boulter v. State, 6 Wyo., 66.)

Counsel for plaintiff in error lays great stress on the fact that defendant was drunk at the time the offense was committed. Rev. Stat., 5369, completely covers this case. (1) It provides that drunkenness shall not be an excuse for any crime or misdemeanor, with an exception which does not appear in this case. (2) It provides that where crime rests in intention the inebriated condition of the defendant at the time of committing the offense may be proven to the jury as bearing upon the question of intention. In this case the inebriated condition of the defendant was shown fully to the jury, and considered by them. This is purely a question of fact, and one which, under the record in this case, this court will not disturb, especially as we shall later on show by abundant authority that intention under a section applying to intoxication, such as the one above cited, was not an element of the crime for which the defendant was convicted. However, the facts fully justify the verdict. The evidence shows that the defendant at the time the homicide was committed was sufficiently sober to occupy his place in the front seat of the wagon, driving the team from Laramie to their camp; that in the quarrel with Oleson he was not in such a maudlin condition but that he knew what he was saying, and resisted the assault from Oleson; that when Larson, the deceased, was pulling Baxtrom away from Oleson, whom he had attacked, the de-

fendant deliberately arose to his feet and fired upon Larson, inflicting the mortal wound from which he died. It will be claimed by counsel that there is a conflict of evidence on some of these points, but we again rely upon the well established rule, that where there is any evidence bearing upon a point an appellate court must consider that the jury found such testimony true, and as the jury are the sole judges of the question of fact, an appellate court will not disturb such findings.

All the record discloses as to a book in the jury room is the hearsay affidavit of Jahren, counsel for defendant in the District Court. True, Jahren, in his affidavit, alleges certain statements made to him by a juror. These statements were not made under oath and can only be considered as mere hearsay. The affidavit of the juror does not appear. Hence, we think it unnecessary to consider this assignment of error for a moment. However, assuming that the jury did consult the statute, it is not reversible error to permit the jury to examine statutes in regard to the crime involved. (Gandolfo v. State, 11 O. St., 114; Mulreed v. State, 107 Ind., 62; Edwards v. Territory, 1 Wash. Terr., 195; Loew v. State, 60 Wis., 559.)

The third, fourth, fifth, sixth and seventh points raised in the motion for a new trial all relate to the evidence and instruction of the court as to the finding of the revolver. While the testimony does not directly connect the revolver in question with the defendant, it does, however, show that there was but one revolver in the crowd at the time of the homicide, and that the defendant had it in his possession. It further shows that no revolver was found in the possession of the defendant, nor any of his associates, when arrested, a very short time after the commission of the crime. The revolver in question was found in the close vicinity of where the crime was committed, and its presence there is wholly unaccounted for upon any other theory than that it was the instrument of death used by this defendant. The court, even should it find that this evidence

should have been stricken out, must find that the jury could not have been prejudiced by the admission of this testimony, for the reason that the record discloses certain uncontradicted facts; namely, that the defendant shot the deceased, and that the deceased died from the wounds received. These facts being established, it was utterly immaterial whether the revolver in question was the weapon used by the defendant or not.

The eighth error assigned in the motion for a new trial is as follows: "For error of the court in adding the following qualification to the instructions asked for by the defendant, and given by the court: 'These instructions apply only to murder in the first and second degrees, and not to manslaughter.'" This was the instruction asked for by counsel for defendant relating to drunkenness as an excuse for commission of crime as bearing upon the question of intent. The court in this additional sentence went one step further than it was required to do, namely, in charging that the instruction applied to murder in the first and second degrees, whereas, as a matter of law, it only applied to murder in the first degree. (17 Ency. L. (2nd Ed.), 413.)

There is no specific intent necessary to the commission of the following offenses: Simple assault and battery; arson, resulting in death, where it appears that the act of firing was intentionally done; murder in the second degree; manslaughter, which is an unlawful killing of human being without malice, express or implied, and without any admixture of deliberation. It is certainly clear that specific intent does not apply in this case, certainly not upon the crime of manslaughter, which alone is covered by the instruction. Specific intent is not an element of manslaughter. (People v. Nichols, 34 Cal., 211; State v. Johnson, 41 Conn., 584; Wilson v. State, 60 N. J. L., 171; People v. Rogers, 18 N. Y., 9; People v. Langton, 67 Cal., 427; State v. Dorland, 103 Ia., 168.)

CORN, JUSTICE.

The plaintiff in error was convicted of the crime of murder in the second degree and sentenced to the penitentiary for a term of twenty years. Numerous errors are assigned.

1. ' The information was verified by the prosecuting attorney before the Clerk of the District Court, who failed to attach the seal of the court to his jurat. No objection was made to the information at the trial on account of this omission, but it is claimed that the error is jurisdictional and may be taken advantage of at any time.

Unless some constitutional right was denied to the defendant, by reason of the omission, it is not very clear why it is any more to be classed as jurisdictional than any other of the numerous irregularities which may occur in the course of a trial, and which, under the statute and by the general current of authority, are deemed to be waived unless seasonably objected to by motion to quash or other proper proceeding.

It is true the statute in prescribing the general duties of the Clerk of the District Court makes him the custodian of the seal of the court, and provides that it shall be attached to all instruments signed by him in his official capacity. But the statute specially prescribing the form of the verification when made by the prosecuting attorney, gives the form of jurat as follows: "Sworn to before me and signed in my presence this .... day of .........., A. D. ...., and I do hereby so certify. .......... (Signature and official title of officer administering the oath.)" This is declared by the statute to be sufficient, and there is no requirement that the officer shall attach his seal. So that, while it was unquestionably the duty of the clerk, under the statute, to attach the seal of the court, it does not appear to have been the purpose of the Legislature to make the performance of this duty essential to the sufficiency of the verification. The seal is, principally at least, a matter of evidence to identify the officer and establish his official character and authority. If the statute provided that the

acts of the officer, not attested by the seal of the court, should be void, a different question would be presented, and a different question might arise if the legality of the defendant's arrest were at issue under Section 4 of the Bill of Rights. But neither of these questions is involved, and the courts take judicial notice of the names and signatures of their officers, and the seal of a court need not be attached to the jurat of an affidavit, sworn to before its clerk, and to be used only in such court. (Mountjoy v. State, 78 Ind., 174.) There is no objection that the defendant did not have a preliminary examination, but we infer from statements in the record that such an examination was held. · And that being true, we think the object of requiring a verification is not to furnish a basis for the prosecution, but, as stated in a Michigan case, only to secure good faith in the institution of the proceedings and to guard against groundless and vindictive prosecutions. (Washburn v. The People, 10 Mich., 385.)

The Texas cases are relied upon by the plaintiff in error. But the statutes under which those decisions were rendered provide that the information shall be "based" upon the affidavit of some credible person, which shall be filed with the information; and they also provide that an information shall not be presented by the District Attorney until oath has been made by some credible person charging the defendant with an offense, and that this oath shall be reduced to writing and filed with the information. (Davis v. State, 2 Tex. App., 184; Morris v. State, id., 503; Daniels v. State, id., 353.) It is the affidavit upon which the information must be based, and not the verification of the information itself, which is deemed jurisdictional in the Texas cases. Miller v. The State, 122 Ind., 356, where it was held that the trial court erred in refusing to quash the information, upon the ground that the jurat to the affidavit upon which the information depended did not have the seal of the notary attached, is cited as directly in point. But the statute under which that case was decided provided that no

notary should be authorized to act until he should have procured a seal, and that all notarial acts not attested by such seal should be void. It is not authority in this case.

Numerous authorities are also cited holding that the omission of the private seal of the judge to a bill of exceptions, where such seal is required, is fatal. But these cases depend upon a different principle, and the necessity for the seal arises out of the origin and purpose of bills of exceptions. By the common law all civil causes might be removed to the higher court by writ of error. This writ brought up the whole record. But motions, exceptions to the admissibility of evidence and the like were not in the record and consequently were not brought up. To obviate this difficulty and make such matters a part of the record, the statute of Westminster 2 (13 Edw. I), C. 31, was enacted, providing that "if the party write the exception and pray that the justices may put their seals to it for a testimony, the justices shall put their seals." (2 Tidd's Prac., 862.)

Having thus been made a matter of record, it was sent up under the command of the writ. As the proceeding is statutory and the method is pointed out, that method must be pursued, and, therefore, where the judge's seal is required, it cannot be dispensed with. The rule is as stated by Sutherland: "When a statute is passed authorizing a proceeding which was not allowed by the general law before, and directing the mode in which an act shall be done, the mode pointed out must be strictly pursued. It is the condition on which alone a party can entitle himself to the benefit of the statute, otherwise the steps taken will be void." (Suth. St. Cons., 454.) The principles underlying the decisions referred to, therefore, do not affect this case.

2. It is contended by plaintiff in error that the trial court was without jurisdiction, for the reason that the information is not sufficient in law and does not state facts sufficient to constitute an offense punishable by the laws of this State. The information, after the formal beginning, is as follows: "That Alfred Gustavenson and John Baxstrom, late of the

county aforesaid, on or about the 19th day of October, A. D. 1900, at the County of Albany, in the State of Wyoming, did unlawfully, wilfully, feloniously, purposely and with premeditated malice kill and murder one Louis Larson, for that the said defendant, Alfred Gustavenson, and John Baxstrom, on the 15th day of October, A. D. 1900, at the county and state aforesaid, did unlawfully, wilfully, feloniously, purposely and with premeditated malice, make an assault on the said Louis Larson, and with a certain deadly and dangerous weapon, to-wit, a pistol, commonly called a revolver, loaded with powder and balls, they, the said Alfred Gustavenson and John Baxstrom, then and there did unlawfully, wilfully, feloniously, purposely and with premeditated malice shoot off and discharge said pistol, and by striking the said Louis Larson with said leaden balls, inflicting thereby on and in the body and arm of the said Louis Larson two mortal wounds, of which said mortal wounds the said Louis Larson then and there continually languished until on or about the 19th day of October, A. D. 1900, at the County of Albany, in the State of Wyoming, he, the said Louis Larson, did then and there die. And so the said Alfred Gustavenson and John Baxstrom did, in manner and form aforesaid, unlawfully, wilfully, feloniously, purposely and with premeditated malice kill and murder the said Louis Larson, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

We understand counsel to insist that, although the information may contain sufficient to satisfy the requirements of the statute, if the pleader had been content to rely upon its authority, yet that, having chosen to set out in detail the manner in which the murder was committed and the weapon used, the information is bad if not drawn according to the strict rules of the common law. But no authority is cited in support of this proposition, and we do not understand it to be the law in this State. It is quite true that by unnecessary particularity of statement the pleader may be bound to a particular line of proof, as, for instance, if the murder is

alleged to have been perpetrated by means of poison, he would not be permitted to prove death by shooting or stabbing, although he was under no necessity of setting out the means of death at all. But our statutes not only authorize a brief statement in the information charging simply that the defendant did purposely and with premeditated malice kill and murder the deceased, omitting the manner in which, or the means by which the death was caused; but they also provide that no information shall be deemed invalid or the proceedings in any manner affected on account of any surplusage or repugnant allegation where there is sufficient matter alleged to indicate the crime or person charged. It is apparent that the information in this case is drawn without much regard to grammatical accuracy, and it must, perhaps, be conceded that the part of it which attempts to set out the manner in which the death was caused charges nothing except that the defendants discharged a pistol. But it is elsewhere clearly charged that the defendants did purposely and with premeditated malice kill and murder the deceased, and this sufficiently indicates the crime and the persons charged. As the evidence tended to show that the plaintiff in error shot and killed the deceased with a pistol, one of the balls taking effect in the body and another in the arm, we do not perceive that there is any misleading allegation in the information, or that there is any ground for the claim of counsel that there was a variance in the proof.

3. The name of the deceased is variously given in the information as Larson and Larsen, and it is urged that this is a fatal repugnancy. Such names are usually pronounced by omitting or slurring over the last vowel, and we think the two spellings are very clearly within the rule of *idem sonans*. Moreover, the statute provides that the information shall not be invalidated, or the proceedings in any manner affected by any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits. And the statute also provides that no variance between the statement in the information and the evi-

dence, in the name of any person named or described therein, shall be ground for acquittal unless the court before which the trial shall be had shall find that such variance is material to the merits of the case, or may be prejudicial to the defendant. Under the facts of this case, it is inconceivable that the defendant could have been misled, or in any way prejudiced by the defects referred to.

4. It is further insisted that the use of the expression "on or about" a certain day, in stating the time when the murder was perpetrated, vitiates the information. By the strict rules of pleading a day certain ought to be stated, and, as the proof is never confined to the day named where time is not of the essence of the offense, there is no good reason why this form of statement should ever be adopted. But there can be no question that it is sufficient under our statute, which provides that no information shall be deemed invalid for omitting to state the time at which the offense was committed, in any case where time is not of the essence of the offense, nor for stating the time imperfectly.

5. Attached to the motion for a new trial is the affidavit of the attorney who represented the defendant in the court below, stating that on the morning following the return of the verdict, a copy of the Revised Statutes of this State was found in the jury room, and that some of the jurors afterwards informed the affiant that one of their number had caused it to be brought in, so that they might read the law relating to homicide, and especially to find out what punishment could be inflicted under the different degrees.

It is the well established rule of law that the testimony of a juror cannot be received to impeach the verdict in which he has concurred, and that, for stronger reasons, his unsworn statements repeated as hearsay in the affidavit of a third person must be rejected. (28 A. & E. Ency. of Law, 273.) Therefore, nothing more is legitimately shown by this affidavit than that the book in question was found next morning in the room where the jury had conducted their deliberations. This fact, without any proof of its having been

read or consulted, is so clearly insufficient to vitiate the verdict as to require no consideration whatever. But counsel for plaintiff in error insist that the only object the jury could have had in view was to ascertain that murder in the second degree was punishable by a less term of imprisonment than the natural life of the accused, and that if the punishment had been found to be imprisonment for life, it is clear they would have found the defendant guilty of manslaughter. So far as any evidence upon the point is concerned, this is mere conjecture. But even if the jury obtained information, either by reading the statute or otherwise, that a minimum punishment of twenty years' imprisonment might be inflicted, and if it be conceded that the jury would not have returned a verdict of guilty of murder in the second degree if they had supposed such verdict would consign the defendant to imprisonment for life, yet we are unable to perceive that this ought in any way to affect the verdict. It is probable that, in every murder trial, the jury know that by a verdict of murder in the first degree they say the accused should suffer death; that by finding him guilty of an inferior degree of crime they save his life, and that these considerations often have an influence in determining what their verdict shall be. This is, in a sense, misconduct, for under our law the question of punishment is not submitted to them. But we think that no court has ever held that a verdict which is sustained by the evidence will be set aside on account of the mental attitude of the jury, or some of its members in regard to such questions or their personal views as to what kind or amount of punishment ought to be inflicted in the particular case, even if it be apparent that such views may have influenced their verdict. We think the incident in question could not have affected any right of the defendant and is not sufficient ground for a new trial.

6. The defendant requested the following instruction: "Drunkenness does not excuse crime, but our laws expressly provide that, where the crime rests in intention, the inebriety of the person may be shown as bearing upon the question of

intention. If, therefore, the jury believe from the evidence that the defendant did the shooting complained of, but at the time his mind was so affected, from the combined effect of previous drinking and the blows received on the head immediately preceding the shooting, that he was incapable to form an intent, and did not know at that time what he was doing, they should find the defendant not guilty." The court gave the instruction with the following modification: "But this instruction applies only to murder in the first and second degrees, and not to manslaughter." It is insisted that this modification was erroneous, because our statute provides "where a crime rests in intention the inebriated condition of the defendant at the time of committing the offense may be proven to the jury as bearing upon the question of intention."

In some states, as in Missouri and Vermont, it has been held that evidence of intoxication is not admissible in a trial for homicide for any purpose whatever. The purpose of our statute seems to be to prescribe the rule upon the subject in this State, making the evidence admissible where the crime rests in intention, as bearing upon that question. It goes no further than that, and does not point out what effect the evidence, when received, ought to have upon the verdict.

At common law the deliberate intent to take life, or premeditated malice, need not exist to constitute murder, but general malevolence is sufficient. But, by statute in this State, murder is divided into two degrees, and to constitute it in the first degree there must be premeditated malice, and such premeditation must be proved like any other fact. Upon a charge of murder in the first degree, therefore, the fact of the intoxication of the accused may be relevant and material as tending to show that the killing was not premeditated; and if it appears that at the time of the homicide he was so drunk as to be incapable of premeditation, or of forming any deliberate intent, and there was no evidence of his having premeditated the crime prior to becoming intoxicated, the offense of murder in the first degree would not be made out.

(Aszman v. State, 8 L. R. A. (Ind.), 33; Booher v. State, 60 N. E. (Ind.), 156; Hopt v. Utah, 104 U. S., 631; Pirtle v. State, 9 Humph., 663; State v. Johnson, 40 Conn., 136; 17 Am. & E. C. L. (2nd Ed.), 408.) But manslaughter, by our statute, is the unlawful killing of a human being without malice, express or implied, and, when voluntary, upon sudden heat and passion. To constitute the offense it is not necessary to prove premeditation or a deliberate intent to kill, or any other specific intent. It was, therefore, proper for the court to so modify the instruction as not to·include manslaughter.

The instruction seems to have been requested upon the theory that if the defendant was temporarily insane and thereby incapacitated to form any specific intent, although such insanity was directly produced by the voluntary use of intoxicating liquors, his capacity to commit crime and his amenability to punishment were thereby destroyed in the same way and to the same extent as if the insanity had been due to other causes. But this is not the theory of the law. It is not questioned that reason may be temporarily dethroned by intoxication as completely as by insanity otherwise produced. But, from the fact that drunkenness is produced by the voluntary act of the person and from considerations of public policy, it is an exception to the rule that insanity is a sufficient defense. As said by Judge Story: "In general, insanity is an excuse for the commission of every crime, because the party has not the possession of that reason, which includes responsibility. An exception is when the crime is committed by a party while in a fit of intoxication, the law not permitting a man to avail himself of the excuse of his own gross vice and misconduct to shelter himself from the legal consequences of such crime." (U. S. v. Drew, 5 Mason, 29.) There was no error in the instruction as given to the jury of which the defendant had any right to complain.

But it is proper to be observed, though the point does not affect this case, that, in reason and upon the authorities, the court erred in applying the principle, stated in the instruc-

tion, to murder in the second degree. "When a homicide results from the use of a dangerous and deadly weapon, the law implies malice and an intention to kill from the effective use of the weapon, and, therefore, the crime is presumably murder in the second degree. No degree of mental disturbance produced by voluntary intoxication will of itself, disconnected from sudden heat or other circumstances, avail to reduce the crime to a lower grade, unless such a diseased condition of the mind had followed the habit of intoxication as to render the accused incapable of distinguishing between right and wrong, or of controlling his conduct when free from the influence of intoxicating drink." (Aszman v. State, *supra;* 1 Whart. Cr. L., Sec. 41.) Intoxication is a mere circumstance to be considered in determining whether premeditation was present or absent. What constitutes murder in the second degree by a sober man is equally murder in the second degree if committed by a drunken man. (Wilson v. State, 60 N. J. L., 184; People v. Rogers, 18 N. Y., 9.) And this is so even when the intoxication is so extreme as to make a person unconscious of what he is doing, or to create a temporary insanity. (Bish. Cr. L., Sec. 400; Upstone v. People, 109 Ill., 178.)

7. The court gave to the jury the following instruction: "The jury are instructed that in this case the defense is made that the defendant was so intoxicated or drunk that he did not know what he was doing at the time he fired the fatal shot, from the effects of which Louis Larson died on the 19th day of October, 1900. It is incumbent upon the defendant to prove this defense beyond all reasonable doubt. The jury are instructed that voluntary intoxication is no excuse for a crime committed under its influence, nor is any state of mind resulting from drunkenness, short of actual insanity or loss of reason, any excuse for a criminal act. And if the jury find from the testimony that immediately before the shooting the defendant, in response to Baxtrom's calling, arose from the ground quickly and began to fire in the direction of Michael Oleson and Louis Larson, the jury may take these facts

into consideration as showing that the defendant knew right from wrong and was in a sane condition." The plaintiff in error objects to the instruction, for the reason that it makes it incumbent upon the defendant to prove his defense beyond all reasonable doubt, and that it calls special attention and gives undue prominence to particular parts of the evidence. The first objection was not presented to the trial court by the motion for a new trial and is not before this court as a ground for the reversal of the judgment. But it may be well to again state the principle that, as the presumption of innocence attends the defendant throughout the trial, and as the State must establish every element of the offense beyond reasonable doubt before it can legally ask for a conviction, it can never be incumbent upon the defendant to prove any defense beyond all reasonable doubt. As to the second objection, it is generally held to be improper for the court to call special attention, by way of argument, to particular portions of the evidence, as it may prejudice the defendant by giving undue prominence to the evidence recited. It will not, however, work a reversal unless it appears that injury resulted. (Cribbs v. State, 86 Ala., 616; Wilkins v. State, 98 Ala., 8; 11 Ency. Pl. & Pr., 189.) The error was harmless in this case. Under the facts, the defendant was only entitled to have the jury informed, upon this subject, that if he was so intoxicated as not to know what he was doing and was incapable, for that reason, of forming an intent, he was not guilty of murder in the first degree. He was acquitted of that offense, and thus obtained all the advantage he could claim from the evidence of his intoxication. It was no ground for his acquittal of the charge of which he was found guilty. In a Michigan case, where the defendant was found guilty of murder, Judge Cooley said: "The counsel for the defendant requested the court to charge the jury that if they believed the defendant was intoxicated to such an extent as to make him unconscious of what he was doing at the time of the commission of the offense, the defendant must be acquitted. A doctrine like this would be a most alarming one to admit

in the criminal jurisprudence of the country, and we think the recorder was right in rejecting it. A man who voluntarily puts himself in condition to have no control of his actions must be held to intend the consequences." (The People v. Garbutt, 17 Mich., 10.)

8. The claim that there was prejudicial error in the introduction in evidence of a pistol which was not fully identified as the one used by the defendant cannot be sustained. The shooting, and the arrest of the defendant an hour or two afterwards, occurred at night. No pistol was found upon his person, and none could be found in the darkness about the place. The next day one was found upon the ground some fifteen feet from where the shooting occurred. It had five chambers, each containing an empty shell. The evidence showed that the defendant fired five times; that no one else in the party had a pistol, and there were no circumstances tending to weaken the probability that it was the weapon used. If, from the size or character of the weapon, it had been attempted to draw important inferences as to the identity of the assailant, the manner of the assault or the like, it might have become the duty of the court to require a more satisfactory identification before admitting it in evidence. But there was nothing of the kind in the case. The evidence was clear that the defendant shot the deceased and the circumstances under which he did it, and there were no disputed questions of fact to be solved by an examination of the pistol or the bullets, or the nature of the wounds inflicted. The evidence might have been admitted or rejected without in any way affecting the case, and its admission was not prejudicial to the defendant.

9. It is urged that the verdict is not sustained by the evidence, and that the defendant was, at most, guilty of manslaughter. The defendant was in a wagon with six companions returning from Laramie City to the place where they were employed upon a railroad grade. Defendant and two others, Baxtrom and Oleson, were upon the front seat, which consisted of a board laid across. Some controversy arose

between defendant and Oleson, and defendant began to call him vile names.    Oleson inquired if he meant it, and defendant said he did and continued to repeat the epithets, when Oleson slapped him, and immediately jumped out of the wagon and called upon defendant to get out.    He jumped out, immediately followed by Baxtrom, who grasped the board upon which they had been sitting and struck Oleson with it. Nelson took the board away from Baxtrom, and the latter jumped on Oleson, but Larson, the deceased, pulled him off. Baxtrom called to defendant to help him, and the latter, with opprobrious epithets and saying "I can fix them," began shooting.    He fired five shots, the two first taking effect upon Larson.    Defendant seems from the evidence to have been the only one who had any firearms.    Baxtrom gives a slightly different account of the affray, and the defendant claims that he fell out of the wagon after being struck a number of times by Oleson, and that he remembers nothing further of what occurred.    But the jury passed upon the evidence and evidently gave credit to the witnesses who narrated the events as above stated.    The evidence strongly tends to show that the trouble was provoked by the defendant, and the claim that he was severely beaten by Oleson is not sustained.    The provocation of the slight blow received from Oleson, and which the defendant had himself provoked by his persistently abusive language, was not sufficient to arouse such heat of anger and passion as would reduce his offense to manslaughter.                                              *Judgment affirmed.*

POTTER, C. J., and KNIGHT, J., concur.