Russell WELLS, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5252.

Supreme Court of Wyoming.

June 20, 1980.

Michael H. Schilling, App. Counsel, Wyoming Public Defender, for appellant (defendant).

Lawrence J. Wolfe (argued), Legal Intern, James E. Gusea, Asst. Atty. Gen., for appellee (plaintiff); John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Div., and Lawrence J. Wolfe, Legal Intern, on brief.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

Appellant was convicted of grand larceny for theft of a motor vehicle in violation of

§ 6–7–301, W.S.1977.[1] Following the verdict of guilty, he was sentenced by the trial judge to imprisonment for a term of not less than thirteen months nor more than two years in the Wyoming State Penitentiary.

On appeal appellant raises as questions:

"I. Whether evidence that Appellant had an opportunity to commit the offense, standing alone, is sufficient to satisfy the State's burden of proving he actually did the act.

"II. Whether a bailee of goods can be convicted of grand larceny when he has come into possession legally and has not committed a taking by trespass."

We will affirm.

On June 1, 1979, one Charles Martz picked up appellant, a hitchhiker. They became friendly and spent the rest of the day together, target shooting and drinking alcoholic beverages until late evening. Martz took appellant to the mobile home where Martz was living with his sister. Martz invited appellant to sleep the night in his pickup. The keys were left in the truck. Martz awakened the next morning, June 2, 1979, to discover that his truck, a 1978 GMC pickup, valued at over $4,000.00, was gone. Martz testified that during the course of their conversations, appellant had advised him that his destination was Colorado.

An investigator for the Douglas County, Colorado Sheriff's Department testified that on June 14, 1979, while responding to a call of burglary in progress, he came into contact with a GMC pickup which, upon investigation, was identified as belonging to Martz and reported stolen. In the bed of the truck was found an orange backpack. Martz testified that appellant had an orange backpack with him. The investigator inventoried the contents. At the trial there was introduced into evidence a prescription bottle of lotion bearing appellant's name, Russell Wells, taken from the backpack. Also in the backpack was a pill bottle bearing the name Russell Wells.

At the close of the State's evidence, appellant's counsel moved for a directed verdict on the ground no prima facie case had been proven. The motion was denied. The defendant did not testify nor present any evidence in defense. There is no conflicting evidence in this case.

■ This court does not sit as a jury to decide guilt or innocence. *Bentley v. State*, Wyo.1972, 502 P.2d 203; *Harris v. State*, Wyo.1971, 487 P.2d 800. In passing upon the sufficiency of the evidence to support a jury verdict of guilty, we must view the evidence in a light most favorable to the State, together with the reasonable inferences that may be drawn from that evidence, whether direct or circumstantial, or both. *Tucker v. State*, Wyo.1979, 594 P.2d 470; *Mirich v. State*, Wyo.1979, 593 P.2d 590.

■ While the evidence in this case is circumstantial, it has the same qualities of persuasion accorded direct evidence. The law makes no distinction between direct and circumstantial evidence and only requires that the jury, before convicting a defendant, be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case. Circumstantial evidence has both standing and stature. *Blakely v. State*, Wyo.1975, 542 P.2d 857.

The elements of the crime of grand larceny which the State must prove are set out in Instruction No. 11.302, Wyoming Pattern Jury Instructions, Criminal, followed and given by the trial judge:

1. The crime occurred within the County of Carbon on or about the date of June 2, 1979.

2. That the defendant took and carried away,

3. With intent to steal,

4. The personal goods of another,

5. Of a value of $100.00 or upwards.

---

1. Section 6–7–301, W.S.1977:

"Whoever feloniously steals, takes and carries, leads or drives away the personal goods of another of the value of one hundred dollars ($100.00) or upwards, is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than ten (10) years."

There is no question raised as to (1) the venue or place where the crime was committed, the date upon which it took place, (4) that the truck belonged to Martz, that it was (5) valued in excess of $100.00 (the jury, from the evidence, found in its verdict that it had a value of $4,225.00), nor that it was taken and moved to the State of Colorado. The only elements left about which questions are raised in this appeal are that it was (2) taken by the defendant with (3) intent to steal. There is really very little left for us to decide in this case—to satisfy ourselves that there was no error.

The facts of this case when bonded together justify the logical and reasonable inference by the jury that the appellant was the thief who stole Martz's pickup. While Martz was a poor witness, his credibility was a question resting with the jury. *Tucker v. State*, supra. It was the prerogative of the jury to believe or disbelieve the witness, and we have no right to usurp the fact-finding function entrusted to the jury. He testified that while he left the keys in the pickup, he gave appellant no permission to drive it away but only gave him permission to use the vehicle as a place to sleep, in that Martz's sister would not have appreciated his bringing a stranger into the mobile home with the rest of her family. He further testified that appellant had an orange backpack.

It is true, according to the evidence above related, that the defendant did have the opportunity to commit the crime charged and there is no doubt about it. By opportunity is meant that he was in the truck and the keys were there. While we may wonder about persons so trusting with strangers, it is a common occurrence that careless persons are the victims of crime; but that does not license larceny. Opportunity to commit the crime, which when linked with other incriminating facts, may establish the guilt of the defendant. *Downs v. State*, Wyo.1978, 581 P.2d 610, 616; *Jones v. State*, Wyo.1977, 568 P.2d 837, 845, and the cases there cited. If opportunity can be established as decisively as here, the identification of the criminal is made more positive. Many times proof of identification can be one of the most difficult hurdles the prosecution must overcome.

Appellant argues as though opportunity was the only evidence against him. That is not so. The presence of the orange colored backpack in Martz's truck further clearly identified the appellant with the disappearance of the truck when found in Colorado. There is nothing to identify the individual by the name of Charles Henry, arrested at the Colorado location in the vicinity of the truck, with the theft of the truck in Rawlins. We would have to speculate that Charles Henry stole the vehicle in Rawlins or in some fashion thereafter acquired it, as proof of the innocence of the defendant. There is nothing in the evidence to link Henry's presence to the disappearance of the vehicle in Rawlins. It is a reasonable inference that appellant would carry his baggage, including his medicines with him. Appellant's statement to Martz that he was headed for Colorado explains the presence of the truck and backpack in Colorado. It is an ultimate reasonable inference that appellant drove the truck away and transported his belongings to that location. There is no basis to speculate that the crime was committed by any person other than appellant.

Although there is no evidence to suggest the appellant himself was arrested at or near the location where the pickup was discovered, the presence of his belongings in the pickup prove a juxtaposition between the appellant and the stolen vehicle. The other circumstances fill in the gaps. A strong nexus is well established. A defendant need not be found in possession of stolen property as long as he may be found by evidence closely related to its disappearance by some connecting evidence. *Dominguez v. State*, Tex.Cr.App.1971, 461 S.W.2d 417; *Scott v. People*, 1968, 166 Colo. 432, 444 P.2d 388; *State v. Hernandez*, 1968, 7 Ariz.App. 200, 437 P.2d 952.

Was there an intent on the part of the defendant to steal the vehicle? Intent may be established by circumstantial evidence. Direct evidence to prove intent is

not necessary. *Mirich v. State*, supra. Martz never did, by consent, give up possession of the vehicle. It remained in the location where he parked it. Any custody the appellant may have had was for the limited purpose of using it as a place to sleep. But the vehicle remained in Martz's possession. When it was moved, there was a taking and "carrying away." The wrongful taking of another's property with no apparent intention of returning it, and in the absence of any explanatory circumstances, evidences an intent to deprive the owner permanently of his property. *State v. Jackson*, 1966, 101 Ariz. 399, 420 P.2d 270, 272. Although Martz may have intended to part with a limited custody, he had no intent to part with title or possession. Moreover, it is essential in larceny that the owner, when consenting to a possession, have no intent to part with title. *Neel v. State*, Wyo.1969, on denial of rehearing, 454 P.2d 241. There was no consent to the taking even though permission was given defendant to sleep in the truck. See also, *Otte v. State*, Wyo.1977, 563 P.2d 1361.

■ All the circumstances surrounding the taking of Martz's vehicle and its recovery justify the reasonable inference that defendant was the thief.

■ Appellant was charged with grand larceny, § 6–7–301, W.S.1977. He asserts that, if anything, he committed the crime of unlawful conversion by bailee, § 6–7–303, W.S.1977.[2] To support this assertion, appellant states that he was given "possession" of the stolen vehicle by the complaining witness. Such a generous reading cannot be given to the facts of this case. The complaining witness gave appellant permission to sleep in the vehicle—nothing more. To contend that the giving of such permission is a "complete surrender of possession" is fatuous and defies credibility. The mere giving of temporary custody for a limited purpose is not a surrender of dominion or control as to be a transfer of possession. *State v. Leicht*, 1973, 124 N.J.Super. 127, 305 A.2d 78; *Reed v. United States*, D.C. App.1968, 239 A.2d 156.

The effect of § 6–7–303, supra, is to make the unlawful conversion by a bailee equivalent to the crime of larceny—the difference being that to prove unlawful conversion by a bailee the State need not prove a trespassory taking. Appellant had no interest in the stolen vehicle—except permission to sleep in it. This does not rise to an expressed or implied relationship of trust between those parties which is a requirement to establish a bailment in the context of the offense of unlawful conversion by bailee. *Epperson v. State*, Wyo.1979, 600 P.2d 1051, 1052. We hold that the appellant was properly charged with and convicted of the crime of grand larceny.

Affirmed.

ROSE, Justice, dissenting.

The case presents a sufficiency-of-the-evidence question. The essential facts are that appellant-Wells was hitchhiking to Colorado when he was picked up by the complaining witness, Mertz. After a day of socializing and drinking, Mertz authorized Wells to spend the night in his truck, while Mertz retired to his trailer close by. Mertz left the keys in the vehicle, but did not give Wells permission to drive it. The next morning the truck was gone and Mertz reported it stolen. Shortly thereafter the truck was located by Colorado police, who found the property in close proximity to a suspect whom the police apprehended and charged with criminal trespass. When located, the truck contained a backpack and prescription medicine bearing Wells' name. It must be assumed, of course, that these items were placed in the truck when Wells was picked up on the highway by Mertz. Some time after the location of the property in Colorado, Wells was arrested in Utah.

2. Section 6–7–303, W.S.1977:
"If any bailee by finding or otherwise, of any money, bank bill or note, or goods or chattels, shall convert the same to his or her own use, with intent to steal the same, he shall be deemed guilty of larceny, in the same manner as if the original taking had been felonious, and on conviction thereof, shall be punished accordingly."

Even if it could be said to be *likely* that Wells stole the truck, I still have some nagging and, I think, reasonable doubts about whether there is sufficient evidence in the record to sustain the verdict and judgment entered thereon. For me, there are other plausible possibilities with respect to how the truck arrived in Colorado. Wells may simply have walked away, leaving his personal items in the truck—he and Mertz had been on a drinking spree that night! The truck could have been stolen either by the persons apprehended and arrested in Colorado or by others. After all, the record shows the truck was found in Colorado while in the *apparent* possession of persons who were, according to charges against them, committing criminal trespass, and it was never established that Wells proceeded to Colorado after the night that Mertz allowed him to sleep in the vehicle.

In asking myself what I think really happened, I find myself indulging the thought that, since Wells did not take the stand to rebut the charge or offer any exculpatory explanation, I am moved to wonder if his failure to testify had anything to do with the outcome of the case. In pursuing this fantasy, I recall that Wells admitted at his sentencing to at least one prior crime. Could it be that his attorney advised him not to testify so as to avoid exposing the jury to evidence of his prior conviction(s)? Additionally, I note from the sentencing hearing that Wells is a drifter, which would make it unlikely that he would be able to produce a credible alibi even if innocent. But this speculation is of little moment except that, in this case where there has been established no real circumstantial- or hard-evidence connection between the activities of the defendant and the evil deed, my guessing games having to do with defendant's innocence seem to me to be just as valid as the guessing games in which the majority indulge in order to uphold his guilt. After all, the State had the burden of proving Wells guilty beyond a reasonable doubt, and in achieving that goal it may not impose on him the burden of rebutting the State's accusation. *Sanchez v. State*, Wyo., 567 P.2d 270, 276 (1977).

In reviewing this conviction, our duty is to inquire whether a jury, from the evidence presented (and not from Wells' failure to rebut the charge), could have found the defendant guilty beyond a reasonable doubt. *Chavez v. State*, Wyo., 601 P.2d 166 (1979); *Gustavenson v. State*, 10 Wyo. 300, 68 P. 1006, 1011 (1902); *Hayes v. State*, Wyo., 599 P.2d 558 (1979); and *Pilon v. Bordenkircher, Warden*, 444 U.S. 1, 100 S.Ct. 7, 62 L.Ed.2d 1 (1979).

This court had occasion to define the reasonable-doubt standard early in its history. In *Palmerston v. Territory*, 3 Wyo. 333, 23 P. 73, 73 (1890), we took issue with a jury instruction [1] which stated in part that

> " '. . . The proof is to be deemed sufficient when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would act in an important affair of their own.' . . ."

We pointed out that men of the highest prudence are often forced to choose between alternatives on only a preponderance of the evidence. We then defined the proof-beyond-a-reasonable-doubt standard as:

> ". . . '[T]he jury must be so convinced by the evidence * * * of the defendant's guilt that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interests, under circumstances where there was no compulsion resting upon him to act at all.' . . ." Id. at 23 P. 74.

The United States Supreme Court has defined the reasonable-doubt standard as one which " 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue,' " *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068,

---

1. We no longer approve the giving of an instruction defining reasonable doubt, and the giving of such an instruction is likely to be considered reversible error. *Cosco v. State*, Wyo., 521 P.2d 1345, 1346 (1974).

1072, 25 L.Ed.2d 368 (1970). Thus, both *Winship* and *Palmerston* define the reasonable-doubt standard as requiring a feeling of certitude of the defendant's guilt—a conclusion that the defendant is probably guilty, or is likely guilty, is not sufficient for a lawful conviction. Moreover, in *State v. Rideout*, Wyo., 450 P.2d 452, 454–455 (1969), we said:

".  .  . [E]vidence creating a mere probability of guilt is not sufficient; much less is evidence which gives rise to mere suspicion or conjecture of guilt. .  .  ." [2]

I do not believe that a non-clairvoyant trier-of-fact, given the facts of this case, could have possessed that necessary "state of certitude" without having relied upon various impermissible inferences, among which is the one that assumes Wells' guilt because he failed to rebut the charge.

I would have reversed with directions to dismiss the charge.

**2.** In *Rideout*, we were discussing circumstantial evidence. In the later case of *Blakely v. State*, Wyo., 542 P.2d 857, 863 (1975), we expressly overruled some of our earlier case law on cir-cumstantial evidence. Nonetheless, I believe the statement from *Rideout* still applies to either direct or circumstantial evidence in light of the reasonable-doubt standard, supra.