THE STATE OF OHIO, APPELLEE, *v.* DRUMMONDS, APPELLANT.

(No. C-74097—Decided January 27, 1975.)

*Mr. Simon L. Leis, Jr., Mr. Leonard Kirschner* and *Mr. Bruce Garry,* for appellee.

*Mr. Linden J. Beck,* for appellant.

PALMER, J. On October 8, 1973, the defendant, the appellant herein, was stopped by a police officer for a traffic violation on a Cincinnati thoroughfare. The investigating officer observed a rifle barrel in plain view within defendant's automobile. On inspection, the weapon proved to be a .30-06 Mauser with five rounds in the magazine and one round in the chamber. After verification that defendant was a previously convicted felon, he was arrested by the investigating officer and subsequently tried for a violation of then R. C. 2923.56, which, in pertinent part, made it a felony to possess a firearm while under certain enumerated disabilities, including a conviction for "any felony of violence and involving moral turpitude * * *." The record contains no evidence that defendant knew, or should have known, of the existence of the statute. His prior felony conviction was for stabbing with intent to kill and wound. On a plea of guilty to the instant charge, he was convicted after the lower court overruled his motions for acquittal which were

predicated on the theory that R. C. 2923.56 was unconstitutional.

## I.

Two assignments of error are asserted on appeal, both raising issues as to the constitutionality of the statute in question. At the outset, we will dispose of defendant's argument that the statute is unconstitutionally void for vagueness in its use of the phrase "moral turpitude." While it is clear that the two conditions are stated in the conjunctive (i. e., in order for the disability to apply, the prior conviction must have been for a "felony of violence" and one which involves "moral turpitude"), it seems to us that the latter condition is at best a redundancy and the whole phrase perhaps tautological if, as would appear to be the case from the various definitions accorded the latter term, all felonies of violence indeed involve moral turpitude.[1] If this be true, the phrase in question is not so much constitutionally infirm as grammatically unsound. In any event, since the particular crime for which defendant was previously convicted, stabbing with intent to wound and kill, is beyond doubt a felony of violence and—if there is any purpose to be served by it— also clearly a crime involving moral turpitude, the defendant is not of that class of persons, if any exist, having the standing to complain of vagueness or unclarity in the use of the term.[2] Accordingly, this assignment of error is overruled.

## II.

The remaining constitutional argument asserts a violation of the due process clause of the Fourteenth Amendment; namely, that the court erred in denying the motion to acquit where no proof was offered showing that defendant knew his possession of a firearm was a criminal offense. Defendant's contention, inasmuch as it raises the question of whether ignorance of the law is a defense in a criminal prosecution, would normally, on the facts at bar, be answer-

---

[1]R. C. 2923.56 is now superseded by R. C. 2923.13; the excision of the term "moral turpitude" from the latter suggests that the legislature, in revising the statute, also considered it redundant.

[2]*Contra, In re a Juvenile*, 65 Ohio Op. 2d 162 (Common Pleas 1973).

ed in the negative, were it not for Justice Douglas' opinion in *Lambert* v. *California* (1957), 355 U. S. 225. There, the Supreme Court (in a 5-4 decision) struck down a Los Angeles ordinance which made it unlawful for a previously convicted felon to remain in that city for more than five days without registering with the Chief of Police. Treating the act of failing to register as the proscribed activity, Justice Douglas repeatedly characterized such act as "wholly passive" conduct[3] and held that due process required either a showing of the probability that the accused had notice of the ordinance, or a showing that he had actual notice thereof.

The statute under attack in the instant appeal provides for the removal of the disability through a petition and hearing procedure. R. C. 2923.56(C). If successful, the act of firearms possession by a convicted felon is no longer deemed criminal. The prime thrust of defendant's argument here would require us to regard the act of failing to petition for a removal of the disability as the proscribed activity. If that were so, the crime could be characterized as "wholly passive" conduct and *Lambert*, arguably, would control.

A comparison of the two laws involved, however, negates defendant's contention. The action made criminal in Ohio is that of possessing a firearm while under disability, not of possessing a firearm while failing to request removal of the disability. *Compare* R. C. 2923.56(A) with 355 U. S. at 226.[4] Since Ohio punishes the active conduct of possessing firearms while under disability, as opposed to the passive conduct of failing to request the removal of the disability, the offense could not be committed through inaction and *Lambert*—by its own terms—is not controlling.

To decide this appeal primarily on the basis of the *Lambert* passive-active distinction is not, however, entirely satisfactory to us. Guilt or immunity ought not to de-

---

[3]*Id.* at 228-229. See also, *United States* v. *Freed* (1971), 401 U. S. 601 at 608.

[4]No argument is made to us and we accordingly make no ruling as to paragraph (B) of R. C. 2923.56.

pend upon what could become a mechanistic characterization of conduct, an inquiry which may demand as much of verbal felicity as it does of legal understanding, and, therefore, an inquiry which is susceptible of inconsistent results in cases of this sort. In the interest of avoiding the potential hazards inherent in logical shortcuts, we choose instead to rule on the basis of what we deduce to be a more precise and expanded articulation of the legal theory underlying *Lambert,* thereby providing, it is hoped, a more useful rule for discerning the dividing line between those criminal statutes which violate due process unless notice is shown, and those where due process is satisfied without any showing of knowledge of the law.

## III.

The rule of *Lambert* exegesized, stems from an appreciation of Justice Douglas' twofold view of the Los Angeles ordinance. First, he wrote that "[i]ts severity lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it." 355 U. S. at 229. His construction demonstrates a belief that the ordinance was, to borrow a tort concept, a law of strict and absolute liability. His holding therefore applies to and means that a criminal statute imposing strict liability, where conviction is possible without a showing of any degree of intentional conduct, is constitutional only if notice or the probability of notice is shown. Correspondingly, in such a case ignorance of the law would be a valid defense. But we cannot too strongly emphasize that one must be able to say of a statute that its liability is absolute and that a defense of, for example, absence of intentional, willful, or voluntary conduct, would not prevail, before requiring the prosecution to prove notice to avoid the opprobrium of unconstitutionality.

Testing this analysis of the rule's first component against other cases in point, we find support for the proposition in *United States* v. *Freed* (1971), 401 U. S. 601, where Justice Douglas again faced the due process problem in the context of a law which made it "unlawful for any person 'to receive or possess a firearm which is not registered to him.' " (Page 607.) The court held the statute con-

stitutional partly for reasons which we will discuss in due course, but it is plain that nowhere in the opinion did Justice Douglas identify the statute as one imposing absolute liability. That being the case, appropriate defenses (such as those suggested in Justice Brennan's concurring opinion, at page 614, that "a conviction of an individual of illegal possession of unregistered firearms had to be supported by proof that his possession was 'willing and conscious' and that he knew the items possessed were firearms") were available and notice not required.

Similarly, in *United States* v. *Dotterweich* (1943), 320 U. S. 277, 278, a corporate president was convicted under a statute which prohibited the " 'introduction or delivery for introduction into interstate commerce of any drug that is adulterated or misbranded.' " The statute was upheld against the accused in his individual capacity, despite the absence of "any *conscious* fraud at all." *Id.* at 281 (Emphasis added). Since, in our view, an indictment alleging the proscribed activity could have been defended against by evidence negating any of the elements of the offense enumerated above—viz., evidence of introducing, delivering for introduction, etc.—it could hardly be said that liability was absolute in the sense of the Douglas view in the *Lambert* ordinance.

Finally, both in *United States* v. *Crow* (C. A. 9, 1971), 439 F. 2d 1193, *vacated on other grounds,* 404 U. S. 1009, and *United States* v. *Thomas* (C. A. 6, 1973), 484 F. 2d 909, *cert. den.* 415 U. S. 924, a federal statute making the possession of firearms by a previously convicted felon a crime was upheld in the face of a constitutional attack predicated on a theory similar to that advanced in the instant appeal. In each of these cases, the court held that "the word 'possession' imports a *knowing* possession." (439 F. 2d at 1195; 484 F. 2d at 914, emphasis added.) Since the defense that possession was unknowing, on proper facts, was available to the accused, the statute did not impose absolute liability and proof of notice was unnecessary.

## IV.

The second component of the *Lambert* rule and the final element of our analysis is seen in Justice Douglas' asser-

tion that "[a]t most the ordinance is but a law enforcement technique *designed for the convenience of law enforcement agencies* through which a list of the names and addresses of felons then residing in a given community is compiled." (355 U. S. at 229, emphasis added.) Conversely, a common element of the statutes which have been upheld despite the due process attack advanced by the defendant herein is their legislative purpose to protect "phases of the lives and health of people which * * * are largely beyond self-protection." 320 U. S. at 280; *see also Freed, Crow,* and *Thomas, supra.* Such purpose is obviously of a higher order than the "convenient law enforcement technique" decried in *Lambert. See also United States* v. *Mancuso* (C. A. 2, 1970), 420 F. 2d 556. We have no difficulty in equating with such higher purpose the intent of the Ohio legislature to protect its general public by making it criminal for a felon, convicted of a crime of violence, to drive the public thoroughfares armed with a cocked and loaded .30-06 rifle. The general public is as much beyond protecting itself from armed felons with a demonstrated propensity for violence as it is "beyond self-protection" from adulterated or misbranded drugs.

Accordingly, we hold that R. C. 2923.56 is constitutional because it meets both the "sufficiency of purpose" test implicit in *Lambert,* and because it is not a statute of absolute liability. Since defenses may be asserted to an alleged violation of its terms, e. g., that the possession of a firearm was unwitting, or involuntary, etc., we find no violation of the due process clause of the Fourteenth Amendment, and will impose no requirement that a prosecutor's case contain any evidence of notice.

The assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

HESS, P. J., and SHANNON, J., concur.