Harold G. CARFIELD, a/k/a Lou
Carfield, Appellant (Defendant),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 5655.

Supreme Court of Wyoming.

Aug. 16, 1982.

Rehearing Denied Sept. 8, 1982.

Stuart S. Healey of Kennedy, Connor & Healy, Sheridan, and Charles F. Moses, Billings, Mont., for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Allen C. Johnson, Sr. Asst. Atty. Gen., and Michael L. Hubbard, Asst. Atty. Gen., for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

THOMAS, Justice.

The major legal issue raised in this appeal is the constitutionality of Wyoming's statute which makes it a felony for persons who have previously pleaded guilty to or been convicted of certain felonies to use or possess any firearm. With respect to this statute the appeal also presents questions of judicial legislation accomplished by means of instructions given to the jury, and federal preemption. This appeal also raises a question relating to the sufficiency of the evidence of mental competency in connection with convictions of two counts of drawing a dangerous weapon. After verdicts of guilty were returned following two separate trials to juries, the appellant was sentenced to pay a fine of $500 on each of the counts of drawing a dangerous weapon, and in addition he was sentenced to two consecutive terms of six months to be served in the Sheridan County Jail. The judgment and sentence of the court provided that with respect to the count of a felon in possession of a firearm the defendant should be fined $1000, and should be confined in the State Penitentiary for not less than three nor more than five years following the completion of his terms of confinement in the Sheridan County Jail. We shall affirm the appellant's convictions and the judgment and sentence.

The significant operative facts can be stated rather briefly. The appellant's troubles evolve out of a relationship with a lady

in Sheridan, Wyoming. He began keeping company with this lady shortly after he moved to Sheridan in June of 1977 to pursue his employment. Early in November of 1980 at the behest of the appellant they broke off this relationship. The appellant soon changed his mind, however, and he made several attempts at reconciliation. The lady was not agreeable, and she avoided discussing the matter with him.

On December 4, 1980, the appellant decided to make one further attempt at dialogue with the lady about the relationship. He had drunk three beers and had taken his prescribed Valium. He armed himself with a .38 calibre Smith and Wesson Model 10 revolver and then walked about a mile to the lady's home. There he disconnected the television cable, believing that it was the telephone wire. He then forced his way into the home by breaking the windows out of two doors, one of which led into the garage and the other of which connected the house to the garage. He searched the ground floor of the house, but he was unable to find the lady that he came to see. He then knocked all of the glass out of a locked French door, in order to gain access to a stairway which led to an upstairs apartment occupied by another woman. When he was near the top of the stairs he was confronted by the occupant of the apartment. She had been awakened by the lady whom appellant wished to see who had fled from the sounds of his forced entry, which also had aroused the second woman. Appellant pointed the gun in his hand at this woman and demanded to know, in no uncertain terms, where his friend was. He then took a branding iron away from the woman, who had armed herself with it before leaving the bedroom of her apartment, where the lady whom appellant was looking for remained hidden. In an attempt to calm his victim, the appellant placed the gun in his coat pocket. The woman then bandaged his wrist, which had been severely cut by broken glass. After his wound had been tended to, the appellant noticed a telephone sitting on the diningroom floor, and he yanked the cord of the telephone from the wall.

At this juncture the appellant started back down the stairs, and he took the gun out of his pocket on the way. At the bottom of the stairs two Sheridan police officers, who had responded to the call for assistance from the lady whom appellant was seeking, stopped the appellant and ordered him to drop the gun. Appellant began to raise the barrel of the gun in a manner that the police construed as threatening, and only after a second warning was issued did he, after a moment's hesitation, pitch the weapon forward through the broken remains of the French door.

The record reveals that the appellant was convicted on a charge of robbery in Lincoln County, Nebraska, on February 15, 1956.

At the appellant's request a psychological evaluation of him was accomplished. The county attorney then filed an Information, which charged the appellant with two counts of aggravated assault with a dangerous or deadly weapon, one count of burglary, and a count of unlawful possession of a firearm by a person convicted of the crime of robbery. Upon being arraigned, the appellant entered alternative pleas of not guilty, not guilty by reason of mental illness or deficiency at the time of the offense, and not triable by reason of present mental illness or deficiency. He was examined at the Wyoming State Hospital in accordance with the procedure provided in §§ 7–11–301 et seq., W.S.1977, for the purpose of determining his competency to stand trial. The result of the examination was an opinion that he was competent to stand trial, and following a pretrial conference the district court granted appellant's motion to sever Count IV, the charge of a felon in possession of a firearm, from the trial of the other charges.

On September 29, 1981, the trial on the charges of assault with a dangerous weapon and burglary was held. At the close of the evidence the district court granted the appellant's Motion for Judgment of Acquittal on the burglary charge, but he permitted the two counts of assault with a dangerous weapon to be presented to the jury. The

jury acquitted the appellant of the charges of assault with a dangerous or deadly weapon, but convicted him on both counts of the lesser included offense of drawing a dangerous weapon.

Prior to his trial on the remaining count of a felon in possession of a firearm, the appellant withdrew his plea of not guilty by reason of mental illness or deficiency. He then filed a number of pretrial motions raising the constitutional attacks upon the statute which he urges on appeal. That trial was held on November 3, 1981, and the jury returned a verdict of guilty. On November 5, 1981, an order was entered denying the appellant's pretrial motions. The appellant then filed post-trial motions which raised the same constitutional issues, and these motions were denied after a hearing on December 1, 1981. The judgment and sentence was entered on December 23, 1981.

During the first trial the appellant presented testimony, by both expert witnesses and the opinions of lay witnesses, that at the time of his criminal acts he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. Appellant, a number of years earlier, had been diagnosed as a paranoid schizophrenic, and he had been given shock treatments in 1954. Both the defense psychologist and the defense psychiatrist testified that the appellant suffered from a mental illness or deficiency.

The expert witness for the State, a licensed psychiatrist practicing at the Wyoming State Hospital, also testified that the appellant did not know the nature of his criminal conduct or have the capacity to conform his actions to the requirements of law. His opinion differed from that of the defense witnesses, however, in that he concluded that the appellant was not suffering from a mental illness or deficiency. Instead his opinion was that the appellant was suffering from a borderline personality disorder which, coupled with the appellant's ingestion of the alcohol and Valium, led to his incapacity to either appreciate the nature of his criminal conduct or conform his actions to the requirements of law.

In his brief the appellant stated the issues for this appeal as follows:

"1. There was insufficient evidence for Counts I and II to go to the jury, and the trial court should have dismissed the same for the reasons that the clear and uncontradicted evidence by all witnesses including the State psychiatrist, was that at the time of the events that occurred, Carfield could not by reason of his mental state conform his conduct to the requirements of law.

"2. The statute claimed violated in Count IV as to a felon in possession of a gun is unconstitutional for vagueness, for failure to specify the essential element of the state of mind required.

"3. As charged in this Information, Count IV did not state a public offense and should have been dismissed, in that no state of mind was there alleged or set forth; and despite this, the trial court during the trial of this cause then required the State to allege and prove a state of mind, to-wit: knowledge, admitted testimony in evidence showing a state of mind, gave instructions to this effect as a required essential element, and then included this element in the verdict submitted to the jury.

"4. This statute claimed violated in Count IV is unconstitutional under the Wyoming constitutional right to bear arms.

"5. Count IV should have been dismissed as federal legislation has preempted this field as to felons in possession of guns."

We shall deal first with the issue concerning the mental state of the appellant as it related to the convictions of the offense of drawing a dangerous weapon. The statute under which he was convicted provides as follows:

"Whoever draws or threatens to use any pistol, dirk, knife, slungshot, or any other deadly or dangerous weapon, already drawn, upon any other person, shall be fined in any sum not more than one hun-

dred dollars ($100.00), to which may be added imprisonment in the county jail not exceeding six (6) months; provided, that the provisions of this section shall not apply to a person drawing or threatening to use such dangerous or deadly weapons in defense of his person or property, or in defense of those entitled to his protection by law." Section 6–11–102, W.S.1977. The statute under which appellant was charged provides as follows:

"(b) *With dangerous weapon.*—Whoever, while armed with a dangerous or deadly weapon, including an unloaded firearm, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both." Section 6–4–506(b), W.S.1977.

By way of contrast the burglary statute under which appellant also was charged provides in pertinent part as follows:

"(a) Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession *and with intent to steal or commit a felony therein* may be imprisoned not more than fourteen (14) years:

"(i) Any building or dwelling; or * * *

"(b) Whoever violates subsection (a) under any of the following circumstances may be imprisoned not less than five (5) years nor more than fifty (50) years:

"(i) While armed with a dangerous weapon; or * * *." (Emphasis added.) Section 6–7–201, W.S.1977.

The district court dismissed the burglary charge because the uncontroverted evidence of both the witnesses for the appellant and the State, with respect to his mental state, foreclosed the formation of the specific intent to steal or commit a felony necessary for conviction on the charge of burglary. Section 6–1–116, W.S. 1977, provides as follows:

"Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person or persons, for the purpose of causing the perpetuation [perpetration] of an offense, in which case the person or persons so causing said drunkenness for such malignant purpose, shall be considered principal or principals, and suffer the same punishment as would have been inflicted on the person or persons committing the offense, if he, she, or they had been possessed of sound reason and discretion. *Where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury, as bearing upon the question of intention.*" (Emphasis added.)

Our prior cases hold that the question of the effect of voluntary intoxication upon the ability of the accused to form a required specific intent is for the jury. *Goodman v. State*, Wyo., 573 P.2d 400 (1977); *Rice v. State*, Wyo., 500 P.2d 675 (1972). The propriety of the conclusion of the district court to grant the Motion for Judgment of Acquittal as to the charge of burglary is not before us, however.

Our rule is that voluntary intoxication is not a defense to a crime requiring only a general intent. *York v. State*, Wyo., 619 P.2d 391 (1980); *Brown v. State*, Wyo., 590 P.2d 1312 (1979); *Gustavenson v. State*, 10 Wyo. 300, 68 P. 1006 (1902). The crime of assault with a dangerous or deadly weapon, defined in § 6–4–506(b), W.S.1977, is a general-intent crime. *Brown v. State*, supra; *Fuller v. State*, Wyo., 568 P.2d 900 (1977); *Vigil v. State*, Wyo., 563 P.2d 1344 (1977). Since it is a general-intent crime, the only intent which need be proven beyond a reasonable doubt is that evidenced by doing the acts constituting the offense charged. *Sanchez v. State*, Wyo., 567 P.2d 270 (1977); *Rhodes v. State*, Wyo., 462 P.2d 722 (1969).

Our task in dealing with an appeal from a denial of a motion for judgment of acquittal is summarized in *Aragon v. State*, Wyo., 627 P.2d 599, 602 (1981), as follows:

" * * * Our responsibility in considering the propriety of a ruling on a motion for judgment of acquittal is the same as that of the trial court. [Citation.] The question raised is the sufficiency of the evidence to sustain the charge, which is a matter to be determined within the sound discretion of the trial court. [Citations.] In making that determination the district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate inferences to be drawn from that evidence. If a prima facie case is demonstrated when the evidence is so examined, the motion for judgment of acquittal properly is denied. [Citation.] It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. [Citations.] Such a result is indicated if the evidence requires the jury to speculate or conjecture as to the defendant's guilt or if a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime when the evidence is viewed in the light most favorable to the State. * * * "

Under this standard, and under the conflict in the evidence between the appellant's witnesses and those testifying for the State, it was not error for the court to submit to the jury the charges of assault with a dangerous and deadly weapon. As we previously have noted, the trial court also instructed on the lesser included offense of drawing a dangerous weapon, and on both charges the jury convicted of only the lesser included offense. That offense obviously is a general-intent crime like the charged offense of assault with a dangerous and deadly weapon.

At his second trial the appellant was convicted of a violation of § 6–11–115(a), W.S. 1977 (Cum.Supp.1981), which provides as follows:

"(a) Any person who has previously pleaded guilty or been convicted of murder, voluntary manslaughter, assault to commit murder, aggravated assault, robbery, burglary or sexual assault in the first or second degree, or mayhem, unless pardoned, and who uses or has in his possession any firearm is guilty of a felony."

The Appellant mounts four attacks against this statute. He contends that it is void because of unconstitutional vagueness and furthermore that it is unconstitutional under Art. 1, § 24, Constitution of the State of Wyoming.[1] We conclude that both constitutional attacks are unsound.

▆ All statutes are presumed to be constitutional, and any reasonable doubts as to constitutionality are to be resolved in favor of constitutionality. *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979); *Nimmo v. State*, Wyo., 603 P.2d 386 (1978); *Sanchez v. State*, Wyo., 567 P.2d 270 (1977). The party attacking the constitutionality of a statute has a heavy burden of proving his contention, with all reasonable doubt resolved in favor of its constitutionality. *Nickelson v. State*, Wyo., 607 P.2d 904 (1980); *State v. Stern*, Wyo., 526 P.2d 344 (1974). In dealing with challenges of unconstitutional vagueness which pertain to statutes that do not involve the fundamental freedoms of the First Amendment, we examine the statute in light of the facts of the case at hand to determine if it sets forth the acts or conduct required or forbidden with reasonable certainty and in a fashion whereby a person of ordinary intelligence is given fair notice that his contemplated conduct is forbidden. *Sears v. State*, Wyo., 632 P.2d 946 (1981); *Sorenson v. State*, supra.

▆ Tested by these criteria we conclude that § 6–11–115, W.S.1977 (Cum. Supp.1981), is not unconstitutionally vague. This statute forbids the use or possession of a firearm by one who has been convicted of or pleaded guilty to certain crimes describ-

1. Article 1, § 24 of the Constitution of the State of Wyoming provides:

"The right of citizens to bear arms in defense of themselves and of the state shall not be denied."

ed in the statute, unless the individual has been pardoned. The crime is a general-intent crime, but it does require knowledge or scienter to be proved as an essential element. *Dorador v. State*, Wyo., 573 P.2d 839 (1978). In order for there to be unlawful possession, as possession is used in this statute, the accused must know that he does have possession of a firearm.

Other jurisdictions have reached the same conclusion in interpreting similar statutes. The Supreme Court of the United States, in construing the National Firearms Statute, 26 U.S.C. §§ 5841 et seq., an analogous statute, held that the only required intent is knowledge of possession of a firearm. *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), reh. denied 403 U.S. 912, 91 S.Ct. 2201, 29 L.Ed.2d 690. In dealing with the federal counterpart to our statute, Title VII of the Omnibus Crime Control and Safe Street Acts of 1968, 18 U.S.C.App. §§ 1201 et seq., the federal courts similarly have ruled that the statute proscribes "knowing" possession of firearms by felons. *United States v. Donofrio*, 450 F.2d 1054 (5th Cir. 1974); *United States v. Wiley*, 478 F.2d 415 (8th Cir. 1973), cert. denied 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974); *United States v. Mathews*, 518 F.2d 1296 (9th Cir. 1975); and *United States v. Laymon*, 621 F.2d 1051 (10th Cir. 1980). Other state courts have also interpreted their statutes forbidding possession of firearms to include the requirement that the possession be "knowing." *Davis v. State*, Alaska, 499 P.2d 1025 (1972) rev'd on other grounds 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)[2]; *People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979); *State v. Neal*, 215 Kan. 737, 529 P.2d 114 (1974); *State v. Heald*, Me., 382 A.2d 290 (1978); *State v. Drummonds*, 430

Ohio App.2d 187, 72 Ohio Op.2d 406, 334 N.E.2d 538 (1975); *Williams v. State*, Okl. Crim., 565 P.2d 46 (1977); *State v. Hash*, 34 Or.App. 281, 578 P.2d 482 (1978); *Hazel v. State*, Tex.Cr.App., 534 S.W.2d 698 (1976). See also 94 C.J.S. Weapons § 5 (1956).

The contention of the appellant that the statute unconstitutionally infringes upon his right to bear arms is no more successful than his claim that the statute is void for vagueness. The appellant does not contend that the statute infringes upon his federal constitutional right to bear arms.[3] He recognizes that the Second Amendment to the Constitution of the United States of America providing the right to keep and bear arms is not invoked in the absence of a reasonable relationship to the "well regulated Militia" provision of the amendment. *United States v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939).

The appellant does assert, however, that the statute does infringe upon his rights under Art. 1, § 24 of the Constitution of the State of Wyoming. By its very terms that constitutional provision grants a limited right to bear arms "in defense of themselves and of the state." In this case there is no claim, nor would the facts support such a claim, by the appellant that his possession was for the purpose of defending the State or himself. Instead he simply asserts that as a citizen he cannot be foreclosed from the possession of firearms.

Recent decisions of other state courts dealing with the validity of statutes similar in tenor as attacked under their constitutions have indicated that the right to bear arms is subject to the legitimate exercise of the police powers of the State. *Hyde v. City of Birmingham*, Ala.Cr.App.,

---

2. The Supreme Court of Alaska, in a situation that resembles the instant case, reviewed convictions of Davis at different trials. At one of those trials he was convicted of being a felon in possession of a concealed firearm, and it is the portion of the opinion of the Alaska court dealing with that conviction which is relied upon here. The Supreme Court of the United States specifically noted that the conviction arising out of that charge was not in issue before that

Court. *Davis v. Alaska*, 415 U.S. 308, 314, fn. 3, 94 S.Ct. 1105, 1109, fn. 3, 39 L.Ed.2d 347 (1974).

3. The Second Amendment to the Constitution of the United States of America provides:

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

392 So.2d 1226 (1980); *State v. Rascon*, 110 Ariz. 338, 519 P.2d 37 (1979); *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975); *Carson v. State*, 241 Ga. 622, 247 S.E.2d 68 (1978); *State v. Rupp*, Iowa, 282 N.W.2d 125 (1979); *State v. Amos*, La., 343 So.2d 166 (1977); and *Shepperd v. State*, Tex.Cr. App., 586 S.W.2d 500 (1979). We agree with these decisions, and we hold that our statute which has for its purpose the prevention of the use of firearms in connection with violent crimes is a legitimate exercise of the police power of the state and is not unreasonable. As stated by the Supreme Court of Colorado:

> " * * * To limit the possession of firearms to those who, by their past conduct, have demonstrated an unfitness to be entrusted with such dangerous instrumentalities, is clearly in the interest of the public health, safety, and welfare and within the scope of the Legislature's police power. * * * " *People v. Trujillo*, 178 Colo. 147, 497 P.2d 1, 2–3 (1972).

▮▮▮ The appellant's contention with respect to judicial legislation is closely related to his attack upon the statute for vagueness. He argues that the trial court improperly instructed the jury that one of the elements of the crime which must be proven by the State was "that the Defendant knowingly had in his possession a firearm." We have recognized above those constructions of similar statutes which hold that knowledge must be an element of the crime of possession. The Information which was filed charged that the defendant "did unlawfully use or have in his possession a firearm." Consistent with the authorities previously cited it is our holding that possession under the statute cannot be unlawful in the absence of proof that the accused knew that he did have a firearm in his possession.

▮▮▮ Finally we turn to the claim of the appellant that there has been a federal preemption of the field under the Supremacy Clause of the Constitution of the United States set forth in Art. VI, Clause II of that document. The appellant particularly points to Title 18 U.S.C.App. § 1202 as a statute which proscribes the same conduct as § 6–11–115(a), W.S.1977 (Cum.Supp. 1981).

In *Rice v. Santa Fe Elevator Corporation*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), the Supreme Court of the United States noted "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that is the clear and manifest purpose of Congress." In preserving under our federalist system the federal-state balance, courts will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction absent clear indication to the contrary. *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). In analyzing state and federal laws to determine if they are so inconsistent that state law must give way, we examine them as they are interpreted and applied, not merely as they are written. *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), reh. denied 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977).

It is clear that Title 18 U.S.C.App. § 1202(a) does not reach the "mere possession" of firearms by convicted felons. Some connection with interstate commerce must be established. *Bass v. United States*, supra. By contrast § 6–11–115(a), W.S. 1977 (Cum.Supp.1981), precludes "mere possession" of firearms by those convicted of certain crimes without the need of showing a nexus with interstate commerce. The Supreme Court of the United States in fact has noted that any other interpretation of the federal statute, other than the one requiring the nexus with interstate commerce, would intrude upon traditional state criminal jurisdiction. *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).

We have further insight into the intent of Congress in that portion of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, which is now codified in 18

U.S.C. §§ 921 et seq. Title 18 U.S.C. § 927 provides that:

"No provision of this chapter [18 U.S.C. § 921, et seq.] shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any state on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the state, so that the two cannot be reconciled or consistently stand together."

We conclude that a comparison of the Wyoming statute with the federal laws demonstrates no conflict. Indeed the statutes are complementary in their application and can be easily reconciled. Since the clear intention of Congress was not to preempt this field, but rather to supplement existing state law in the area, and because of the difference in the statutory elements, we find no merit in this contention of the appellant.

The convictions of the appellant and the Judgment and Sentence of the district court are affirmed.