STATE of Maine

v.

**Dennis Eugene FRIEL.**

Supreme Judicial Court of Maine.

Argued March 13, 1986.

Decided April 18, 1986.

Geoffrey Rushlau, Asst. Dist. Atty. (orally), Bath, for plaintiff.

Andrews B. Campbell (orally), and Dennis Eugene Friel, pro se (orally), Bowdoinham, for defendant.

Before NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ.

GLASSMAN, Justice.

Dennis Friel appeals from the judgment of the Superior Court, Sagadahoc County, entered on a jury verdict of guilty on two counts of possession of a firearm by a felon in violation of 15 M.R.S.A. § 393 (1980 & Supp.1985–1986). On appeal, the defendant contends that section 393 on its face and as applied in this case violates the United States Constitution, amendment II and the Maine Constitution, article I, § 16, and that the trial court erred in numerous evidentiary rulings and in its instructions to the jury. For the reasons hereinafter set forth, we affirm the judgment.

## I.

In September 1983, the defendant was indicted for the illegal possession of a shotgun on or about July 23, 1983, and of a revolver on or about August 25, 1983.[1] From the evidence submitted at trial the jury rationally could have found the following facts: In 1968 the defendant was convicted of larceny from the person, 17 M.R.S.A. § 2102 (1964) (repealed 1975), and the court imposed a two-year suspended sentence. The defendant has never applied for a permit to possess a firearm.

Patrick Lane owned a 12-gauge shotgun. In May, 1983, Lane borrowed $50 from the defendant and advised the defendant he would deliver the shotgun to the defendant as collateral for the loan although the defendant had not requested that he do so. Lane left the shotgun in a closet at the defendant's home while the defendant was absent. On July 23, 1983, the defendant was involved in a fight with two brothers named Alexander at a store located on the

---

1. A third count alleging possession of a shotgun on or about August 12, 1983, was dismissed by agreement of the parties.

floor below the defendant's apartment. The defendant suffered an injury to his right eye. The Alexanders threatened to leave and to return with guns. After the Alexanders had departed, the defendant went to his apartment, loaded the shotgun, went outside, and fired a shot into the air. He continued to stand outside holding the gun until the police arrived. Some days after this incident, Lane came to the defendant's apartment, paid his debt and recovered the gun.

On August 12, 1983, Loren Herrick, a deputy in the Sagadahoc County Sheriff's Department, participated in a search of the defendant's apartment and observed a .357 magnum revolver located on a window sill or shelf above the bed in the master bedroom. There were cartridges in the gun. On August 25, 1983, Herrick participated in a second search of the apartment and observed the revolver in the same location. The officer took possession of the revolver and later on the same day obtained possession of the shotgun owned by Lane.

The jury found the defendant guilty on both counts.

## II.

The defendant contends that 15 M.R.S.A. § 393 (1980 & Supp.1985–1986) on its face and as applied in this case violates the second amendment of the United States Constitution and article I, § 16 of the Maine Constitution and accordingly the indictments must be dismissed. We disagree. Section 393 restricts the possession of firearms by a convicted felon. Section 393(1) provides that a person who has been convicted of any crime punishable by one year or more imprisonment shall not "own, have in his possession or under his control any firearm" unless he obtains a permit.[2] Section 393(2)–(6) establishes the conditions and procedures by which a convicted felon may obtain a permit.

■ The second amendment to the United States Constitution[3] is simply inapplicable to the instant case. This amendment operates as a restraint solely upon the power of the national government and does not restrict the power of the states to regulate firearms. *Miller v. Texas,* 153 U.S. 535, 538, 14 S.Ct. 874, 875, 38 L.Ed. 812 (1894); *Presser v. Illinois,* 116 U.S. 252, 265, 6 S.Ct. 580, 584, 29 L.Ed. 615 (1886); *Quilici v. Village of Morton Grove,* 695 F.2d 261, 269–70 (7th Cir.1982), *cert. denied,* 464 U.S. 863, 104 S.Ct. 194, 78 L.Ed.2d 170 (1983); *United States v. Kozerski,* 518 F.Supp. 1082, 1090 (D.N.H.1981), *aff'd mem.,* 740 F.2d 952 (1st Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 147, 83 L.Ed.2d 86 (1985); *State v. Sanne,* 116 N.H. 583, 364 A.2d 630 (1976) (mem.).

■ We turn then to examine the Maine constitutional provision. Article I, § 16 provides:

> Every citizen has a right to keep and bear arms for the common defense; and this right shall never be questioned.

The right declared by section 16 is limited by its purpose: the arms may be kept and borne "for the common defense." *Cf. Commonwealth v. Davis,* 369 Mass. 886, 887–88, 343 N.E.2d 847, 848–49 (1976) (interpreting "common defense" as

---

2. In full, section 393(1) provides:

    No person who has been convicted of any crime, under the laws of the United States, the State of Maine or any other state, which is punishable by one year or more imprisonment or any other crime which was committed with the use of a dangerous weapon or of a firearm against a person, except for a violation of Title 12, chapter 319, subchapter III, shall own, have in his possession or under his control any firearm, unless such a person has obtained a permit under this section. For the purposes of this subsection, a person shall be deemed to have been convicted upon the acceptance of a plea of guilty or nolo contendere or a verdict or finding of guilty by a court of competent jurisdiction.

    A violation of this subsection constitutes a Class C crime. § 393(8).

3. U.S. Const., amend. II provides:

    A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

"point[ing] to service in a broadly based, organized militia"); *State v. McKinnon*, 153 Me. 15, 21–22, 133 A.2d 885, 888–89 (1957) ("common defense" does not include hunting).

The constitution also provides for an express grant to the Legislature of "full power to make and establish *all reasonable laws and regulations for the defense* and benefit *of the people of this State*, not repugnant to this Constitution." Me. Const., art. IV, pt. 3, § 1 (emphasis added). The Legislature, by its enactment of section 393, reasonably determined that the common defense would not be served if a person, who by the commission of a felony had demonstrated a dangerous disregard for the law, possessed a firearm in the absence of a permit. *Cf. State v. Vainio*, 466 A.2d 471, 476 (Me.1983) ("demonstrated their unfitness to be entrusted with dangerous weapons"), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984); *State v. Heald*, 382 A.2d 290, 295 (Me.1978) ("obvious legislative purpose of deterrence").

■ The defendant contends that the Legislature may not make this determination and points to the language in article I, § 16 guaranteeing the right to "[e]very citizen" and providing that "this right shall never be questioned." We note that courts in other states with similar language in their constitutional provisions guaranteeing the right to keep and bear arms have rejected challenges, based on those provisions, to state statutes restricting or denying the possession of firearms by convicted felons.[4] The constitutional guarantee must be interpreted in its entirety and in light of its purpose. We find nothing in the statute itself or in the facts of this case that infringes upon the purpose. We hold therefore that 15 M.R.S.A. § 393 on its face and as applied in the instant case does not violate article I, § 16.[5]

### III.

We next address the defendant's contention that his motion for the suppression of the revolver from evidence was erroneously denied. The police seized the revolver on August 25, 1983, during the course of a search pursuant to a warrant. In his motion the defendant contended that probable cause for the August 25 search was based on information acquired by Deputy Herrick during the course of an allegedly illegal search of his apartment in an unrelated case on August 12, 1983, and further contended that the affidavit on which the warrant was based did not support probable cause because it rested on this "stale" information. At the suppression hearing on his motion, the State offered the August 25 warrant, affidavit and inventory. No evidence was offered by the defendant. After receiving the exhibits and hearing legal

---

**4.** *Bristow v. State*, 418 So.2d 927, 930 (Ala.Crim.App.1982) ("every citizen"; statute prohibiting possession of pistol); *People v. Blue*, 190 Colo. 95, 102–103, 544 P.2d 385, 390–91 (1975) ("The right of no person to keep and bear arms ... shall be called into question"; statute prohibits possession of firearm); *State v. Amos*, 343 So.2d 166, 167–68 (La.1977) ("each citizen"; statute prohibits possession of firearm); *Shepperd v. State*, 586 S.W.2d 500 (Tex.Crim.App.1979) ("[e]very citizen"; statute prohibits possession of firearm away from residence); *State v. Tully*, 198 Wash. 605, 89 P.2d 517 (1939) ("the individual citizen"; statute prohibits possession of pistol).

**5.** In addition to the cases cited in n. 4, courts have rejected challenges based on state constitutional keep-and-bear arms provisions to statutes making illegal a felon's possessing a firearm in the following cases: *Landers v. State*, 250 Ga. 501, 299 S.E.2d 707 (1983); *State v. Cobb*, 428 So.2d 935 (La.App.1983); *State v. Williams*, 358 So.2d 943, 946 (La.1978); *Carfield v. State*, 649 P.2d 865 (Wyo.1982). *See also State v. Noel*, 3 Ariz.App. 313, 414 P.2d 162 (1966) (statute prohibits convicted felon's possessing a pistol); *Eary v. Commonwealth*, 659 S.W.2d 198 (Ky.1983) (statute prohibits convicted felon's possessing a handgun); *State v. Cartwright*, 246 Or. 120, 418 P.2d 822 (1966), *cert. denied*, 386 U.S. 937, 87 S.Ct. 961, 17 L.Ed.2d 810 (1967) (statute prohibits convicted felon's possessing a concealable firearm). *Cf. State v. Rascon*, 110 Ariz. 338, 519 P.2d 37 (1974) (condition that probationer not have a firearm under his control does not violate state constitutional "right of an individual citizen" to bear arms).

argument, the court denied the motion to suppress.

A defendant who seeks to challenge the legality of a search or seizure conducted under a properly issued and executed warrant, has the burden of proving the illegality. *State v. Rand,* 430 A.2d 808, 817 (Me.1981). In essence, the defendant contends that the August 12, 1983 search was illegal and therefore that the August 25 search resting on Deputy Herrick's observations on August 12 is also illegal. Since the defendant concedes that the Superior Court, acting in the unrelated case, upheld the legality of the August 12 search and since the defendant presented no evidence at the suppression hearing, the defendant failed to meet his burden of proof as to this contention.

Nor is there merit in the defendant's contention that Deputy Herrick's affidavit does not support probable cause because it was based solely on "stale" information. In *State v. Willey,* 363 A.2d 739 (Me.1976), we stated that whether past circumstances disclose a probable cause that is still continuing at the time of the request for a search warrant is not determined merely by the passage of time, but may also depend upon the circumstances of each case. Accordingly, we refrained from prescribing a *per se* rule fixing a mandatory maximum time within which a search warrant must be sought after the occurrence of events relied on to show probable cause. *Id.* at 742. In the instant case, considering the circumstances, including the kind of criminal activity involved, the nature of the property to be seized, and its location, it was not error to conclude that thirteen days after first seen in the defendant's home there was probable cause to believe that the firearm was still there. Accordingly, the court properly denied the defendant's motion to suppress.

## IV.

The defendant's next contention raised for the first time on this appeal is that the Superior Court erred in denying his motion to suppress his statement of August 25, 1983, and the evidence obtained by use of that statement because the conduct of the police constituted the functional equivalent of custodial questioning without giving him the warnings provided in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Under *Miranda,* the State may not use statements of a defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. at 1612.

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). *See State v. Estes,* 418 A.2d 1108, 1111 (Me.1980). When a defendant has given a statement in the absence of *Miranda* warnings, the State bears the burden of proving by a preponderance of the evidence that the warnings were not required. *State v. Longley,* 483 A.2d 725, 730 (Me.1984). The ruling of the trial court on the defendant's motion to suppress will be upheld if the record provides rational support for the court's determination. *Id.*

Contradictory testimony concerning questioning of the defendant was presented at the hearing on the defendant's motion. Deputies Herrick and Ackerly testified that they were the only officers present when Deputy Herrick arrested the defendant on the present charges. At the time of the arrest, Herrick handed the defendant a copy of the arrest warrant and the warrant for the search of the defendant's apartment. After reading the search warrant, the defendant stated that the shotgun belonged to Patrick Lane. The

defendant testified, however, that after placing the defendant under arrest and handing the defendant copies of the warrants, Herrick had questioned the defendant concerning the location of the shotgun, and the defendant had stated it was no longer at the defendant's home because Patrick Lane had picked it up sometime before.

■ On the evidence before it, the trial court was warranted in concluding that after the arrest of the defendant Deputy Herrick did not actually interrogate the defendant or by his conduct engage in the functional equivalent of interrogation of the defendant.

## V.

The defendant next contends that the court erred in admitting into evidence, over the objections of the defendant, a certified copy of the 1968 judgment and conviction of the defendant for larceny from the person. Prior to the submission into evidence the trial court twice suggested that the defendant stipulate to his conviction of a crime punishable by imprisonment of one year or more without indicating the nature of the offense. The defendant declined to stipulate and failed to suggest any other method by which the fact of his conviction could be admitted without indicating the nature of the offense. On appeal the defendant contends that the admission into evidence of the document and in particular of the exact nature of the conviction deprived him of due process. We find no merit in this contention.

■ The State was required to prove as an essential element of each count that the defendant had been convicted previously of a crime punishable by one year or more of imprisonment. 15 M.R.S.A. § 393(1). As an element of the offense the evidence of the prior conviction was highly relevant and not excludable under any rule. *See* M.R.Evid. 401, 403.

## VI.

Finally, we address the defendant's contention that the trial court committed reversible error by its instructions on the definition of "control" and on the competing harms defense. We must read the jury instructions in their entirety to determine if they are adequate. *State v. Perry*, 486 A.2d 154, 156 (Me.1985); *State v. Sapiel*, 432 A.2d 1262, 1270 (Me.1981).

■ *Definition of control:* 15 M.R.S.A. § 393(1) provides that a convicted felon shall not "own, have in his possession or under his control any firearm." The Maine Criminal Code does not define "control." In the instant case the trial court defined "control" in terms borrowed from the definition of "constructive possession" that we have employed when reviewing sufficiency of the evidence challenges to convictions for possession of contraband. *See State v. Lambert*, 363 A.2d 707, 711 (Me.1976); *State v. Gellers*, 282 A.2d 173, 178–80 (Me. 1971), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2047, 32 L.Ed.2d 337 (1972). We note that the defendant's first proposed instruction defining "control," filed on the second day of trial, closely paralleled the instructions in fact given by the court and differed from it only marginally. Given the fact that both firearms were proven to be in the personal residence of the defendant for an extended period of time, the court's instructions appropriately directed the jurors' attention to whether the defendant was aware the firearms were there and had the ability, without restriction, to reduce them to his physical possession. In the circumstances of this case any shortcoming in the court's instruction on "control" was harmless.

*Competing harms defense:* Over the State's objection the court instructed the jury on the competing harms defense on Count I involving the July 23 incident. *See* 17-A M.R.S.A. § 103(1) (1983). The court further instructed the jury that it should not consider the competing harms defense "if the State has satisfied you that prior to the fight in the store Mr. Friel had already

possessed or controlled the shotgun .⁙.., and that he had previously been convicted of a felony." The defendant objected to the instruction, contending that possession or control prior to the fight in the store did not preclude the competing harms defense.

 The defendant is correct that possession or control of a firearm prior to the fight in the store does not preclude the competing harms defense for his conduct *following* the fight. The indictment, however, charged the defendant with possession or control *on or about* July 23. If the jury found the defendant did not possess or control the gun prior to the fight in the store, then under the instructions as given it might find his conduct after the fight to be justified. If, however, the jury found the defendant in fact possessed or controlled the gun prior to the fight, the competing harms defense is inapplicable. *See State v. Kee,* 398 A.2d 384, 386 (Me.1979) (the competing harms defense requires "imminent physical harm" that is shown as a fact to exist).

We have carefully examined the defendant's remaining contentions and find them to be without merit.

The entry is:

Judgment affirmed.

All concurring.