STATE of Maine

v.

Donald DEHETRE.

Supreme Judicial Court of Maine.

Argued Nov. 5, 1987.

Decided March 21, 1988.

Mary Tousignant, Dist. Atty., Anne Jordan (orally), Asst. Dist. Atty., David Gregory, Alfred, for plaintiff.

Kenneth I. Marass (orally), Arthur H. Dumas, P.A., Sanford, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

Donald Dehetre appeals his conviction of two counts of unlawful sexual contact, 17–A M.R.S.A. § 255 (Class C) (1983) entered after a jury trial in the Superior Court, York County. Because we find no merit in any of the various claims of error that Dehetre asserts on appeal, we affirm his conviction.

At the time in question, Dehetre, a self-employed roofer, was living in Springvale with his wife, his son, and the victim, who was his stepdaughter and the daughter of his wife. In May of 1985, the victim, who was then seven years of age, was in the second grade at a school in Springvale. Late in May, the victim's teacher received complaints that during recess periods the victim was pinching and patting other children in a "provocative" manner. The teacher spoke with the victim about her behavior. During their discussion the victim told the teacher that she had been touched in the same manner by her stepfather. The teacher then informed her principal of the victim's allegation. On June 4, 1985 the victim was interviewed at school by a representative of the Department of Human Services. The teacher, the school principal and Roderick Beaulieu, a Sanford police officer, were also present. During the interview, the victim said Dehetre had entered her bedroom one night while he was drunk and rubbed his hand in her crotch area over her nightgown.

About a week after the June 4 interview, Dehetre came to the Sanford Police Station to speak with Beaulieu. At trial, Beaulieu testified that after being given *Miranda* warnings, Dehetre told Beaulieu he had been having problems with alcohol and that he could have committed the abuse alleged by the victim. Beaulieu further testified that he recorded his version of this conversation in a supplemental police report shortly after he had spoken with Dehetre. Subsequent to the police station interview, the victim described to investigators another incident of her abuse by Dehetre.

Dehetre was indicted on two counts of unlawful sexual contact on October 11,

1985. A year later, in October of 1986, a hearing was held on a motion in limine filed by Dehetre to exclude the inculpatory statement he allegedly made to Beaulieu. Although the motion justice indicated that the State's late provision of the report of the inculpatory statement was a discovery violation, he deferred until trial a determination of the sanction to be imposed.

A three-day trial was held that began on December 16, 1986. The trial justice denied Dehetre's motion in limine. Among the State's witnesses were the victim and Beaulieu. The victim testified regarding two incidents of sexual abuse by Dehetre. Beaulieu testified about the June 4 interview with the victim and the inculpatory remarks made by Dehetre approximately a week later at the police station.

Defense witnesses included Dehetre, the Assistant District Attorney who was present at the motion in limine hearing, and the victim's grandmother. The Assistant District Attorney's testimony related to the handling of the supplemental police report that dealt with Beaulieu's interview with Dehetre which was provided for the first time to the defense in October, 1986 as a part of discovery.[1] The victim's grandmother, on cross-examination, testified that Dehetre had harassed the victim over the phone after the victim had made her allegations against him. These calls were made after the June 4 interview in 1985 while the victim was staying temporarily with her grandmother. The trial justice instructed the jury to disregard the grandmother's testimony regarding Dehetre's harassing phone calls.

## I.

Dehetre's first contention is that the trial justice erred in his denial of the motion in limine. The justice who initially considered the motion in October of 1986 deferred decision on a sanction until trial, but did not preside at the trial. The trial justice denied the motion.

Dehetre's argument on this point seems to be as follows: Because the motion justice had indicated he would probably grant the motion in limine with respect to the inculpatory statement made by Dehetre to Beaulieu, the motion justice's presumed intent was binding on the trial justice. This argument is without merit.

By deferring action on the sanction to be imposed, the motion justice made no final decision that was binding on the justice who presided at trial. Because the report of Dehetre's inculpatory comments was provided at an unjustifiably late time in discovery, the motion justice, assuming that a trial was imminent, found this to be a violation of M.R.Crim.P. 16(a)(1)(B)[2], but deferred imposition of a sanction until trial, at which he apparently expected to preside.

 Whether to impose a sanction for the violation of discovery rules lies in the sound discretion of the justice considering the sanction. *State v. Reeves*, 499 A.2d 130, 133 (Me.1985). In order to demonstrate that the trial justice abused his discretion by not granting the motion in limine, Dehetre must demonstrate that (1) he was prejudiced as a result of the discovery violation and (2) this prejudice resulted in an unfair trial. *Reeves*, 499 A.2d at 133; *State v. Sapiel*, 432 A.2d 1262, 1268 (Me. 1981). Because the trial was delayed for two months after the supplemental report was provided, the trial justice could have justifiably concluded that Dehetre and his counsel had ample time to review the contents of the report. It is notable that in his brief, Dehetre does not specify any undue prejudice caused by the State's discovery

---

**1.** The Assistant District Attorney was the prosecutor originally assigned to this case, but was replaced at trial due to illness.

**2.** The motion justice did not explicitly refer to this Rule, but noted that the State had an obligation to "automatically provide words out of Dehetre's mouth." The justice seemed to be referring to M.R.Crim.P. 16(a)(1)(B), which reads:

... (a) Automatic Discovery
(1) *Duty of the Attorney for the State:* The attorney for the state shall furnish to the defendant within a reasonable time:
... (B) Any written or recorded statements and the substance of any oral statements made by the defendant ...

violation. In these circumstances, the trial justice was free to make a fresh determination of the motion in limine and we find that in denying the motion he acted within the limits of his discretion.

## II.

Dehetre next contends that Beaulieu testified inaccurately in relation to the preparation of his original report of the June 4, 1985 interview with the victim and his supplemental report containing Dehetre's inculpatory statement. Dehetre argues that this testimony came sufficiently close to outright perjury so as to require a reversal of his conviction, since the use of this allegedly false testimony violated his right to due process under U.S. Const. Amend. XIV, § 1. The question of when the reports were prepared is significant. If, for example, the supplemental report was prepared in October of 1986, and not in June of 1985, this would undercut Beaulieu's testimony as to the inculpatory remark made by Dehetre. A jury would be likely to find Beaulieu's testimony more credible if it were corroborated by a report written at a time contemporaneous with that of Dehetre's alleged admission.

Dehetre's claim stems from two alleged inconsistencies in Beaulieu's testimony at trial. The first alleged inconsistency involves Beaulieu's initial report of his interview with the victim. Beaulieu testified that he wrote his initial report the same day as the interview, on June 4, 1985.

■■■ Dehetre correctly points out that although the initial report is dated June 4, 1985, the report also mentions that Dehetre was arrested on June 13. Beaulieu could not have foreseen on June 4 that Dehetre would be arrested on June 13; hence the report appears to have been written sometime after June 13, 1985, contrary to Beaulieu's testimony. If this inconsistency in Beaulieu's testimony amounted to perjury of which the prosecution was aware, Dehetre's conviction would have to be vacated. *See Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *State v. Cormier*, 535 A.2d 913, 916 (Me. 1987). However, we cannot conclude that

this chronological inconsistency alone provides uncontroverted proof that Beaulieu testified falsely under oath. Moreover, Dehetre's counsel pointed out this discrepancy in the initial report during his closing argument to the jury. The jury is the best judge of a witness's credibility, and it was ultimately for the jurors to decide to what extent they found Beaulieu's testimony believable in light of the arguments made by Dehetre's counsel. *See State v. Perry*, 253 A.2d 705, 707 (Me.1969).

Dehetre also contends that Beaulieu's trial testimony regarding when he had written the supplemental report concerning Dehetre's inculpatory statements at the police station had been earlier contradicted by the Assistant District Attorney at the hearing on Dehetre's motion in limine on October 14, 1986. At that time, the Assistant District Attorney explained to the motion justice and Dehetre's counsel the reason why the supplemental report had not been provided to the defense until just before the originally scheduled trial date:

> THE COURT: What's the State's position?
>
> [THE ASSISTANT DISTRICT ATTORNEY]: Your Honor, I was informed of this by Mr. Marass [Dehetre's counsel] that there was a problem. About a week before that, I had been speaking to the victim's father, and he told me that Mr. Dehetre had, in fact, made an admission to Rod Beaulieu. He informed me this admission was made about, at least, was informed of it at least three or four months ago, called Rod Beaulieu because there was nothing in the police report indicating an admission. He said, I must have written it down somewheres, but I don't remember. He checked his file, came down on the 9th, wrote up a supplementary report which I gave to Ken immediately.
>
> With respect to a discovery violation, assuming it is a discovery violation, I don't see how the defendant is prejudiced because they certainly have a week to speak about it with his client.
>
> THE COURT: Are you saying this was on a report somewhere? Are you saying

Rod is now remembering that was said, and he made a supplementary report?

[THE ASSISTANT DISTRICT ATTORNEY]: He had written it down, lost or couldn't find it. When he went back to the file, he couldn't find it. So he made a supplementary report and gave it to me on October 9th.

During cross-examination at trial, Beaulieu testified about the origin of the supplemental report as follows:

Q. Is it not correct that in the months leading up to this trial, there was a lot of discussion between the District Attorney's office and yourself concerning a supplemental report with Donald Dehetre about a statement supposedly made by Donald Dehetre in it?

A. [Beaulieu] Uh-huh, yes.

Q. And this came up in October?

A. That was written a week after that June 4th investigation.

Q. Did you give it to the District Attorney's office prior to that?

A. I turned that report in to my department. For procedure, that report should have been attached to my initial report and gone out with discovery.

Q. Did you tell [the Assistant District Attorney] that you had just made this report back in October, you had written it out in October?

A. No.

■ Beaulieu's testimony did not flatly contradict the description of the origin of the supplemental report as related by the Assistant District Attorney at the earlier hearing. The Assistant District Attorney represented to the motion justice that Beaulieu had originally written the supplemental report at an unspecified time previous to October of 1986, but had subsequently lost or misplaced the original supplemental report and had rewritten it in October. Beaulieu could have been referring to the time he wrote the *original* supplemental report that he attached to his original report when he testified that it was "written a week after the June 4th investigation." One or two follow-up questions would have clarified which report Beaulieu was referring to in his testimony (i.e., the

supplemental report that was attached to the original report which was lost or the subsequently rewritten supplemental report). The decision regarding which questions to ask Beaulieu during cross-examination was a tactical choice that was to be made exclusively by Dehetre and his counsel. That decision may not be relied upon after the fact in an attempt to establish reversible error. We find this record insufficient to support Dehetre's assertion that Beaulieu's testimony contradicted the information furnished by the Assistant District Attorney to the motion justice concerning the supplemental report.

III.

■ Dehetre presents several other arguments, all of which are without merit. Dehetre contends that he was somehow prejudiced by calling the Assistant District Attorney, who represented the State at the motion in limine hearing, as a witness. Dehetre bases his argument on Rule 3.4 of the Maine Bar Rules and *State v. Friel*, 508 A.2d 123 (Me.1986). Nothing in Rule 3.4 prevented the Assistant District Attorney from testifying. Rule 3.4(j) bars a lawyer from accepting employment when the lawyer knows or should know he is likely or ought to be called as a witness. Dehetre's decision to call the Assistant District Attorney in this case was not so probable that the Assistant District Attorney should have recused himself from the case at its outset. Dehetre's reliance on *Friel* is misplaced; that case is inapplicable to any issue in this case. This ground for appeal is meritless.

In his brief, Dehetre argues that the victim's testimony "was greatly at variance with the discovery provided to the defendant, including that presented in the Statement of Expected Proof."

■ Our review of the record reveals that the victim's testimony at trial was almost identical to the Statement of Expected Proof. The only variance was in relation to the time of year during which the second incident of abuse occurred. The victim stated that it took place during a

cold, snowy time of the year, whereas the Statement of Expected Proof indicated she had previously told investigators that the incident took place during a warm month. Dehetre never objected at trial to this variance in the victim's testimony. Because Dehetre failed to preserve his objection for appeal, it will be reviewed only for obvious error. *State v. Poulin*, 507 A.2d 563, 564 (Me.1986); *State v. West*, 475 A.2d 1141, 1142 n. 1 (Me.1984); M.R.Crim.P. 52(b). This slight variance did not result in manifestly prejudicial error inclining to produce serious injustice, *Poulin*, 507 A.2d at 564, and Dehetre's argument is without merit.

■■■■ Dehetre next argues that the verdict was not supported by sufficient evidence. The State's case relied heavily on the victim's testimony. The testimony of a prosecutrix alone will support a conviction in a sexual assault case unless her testimony is "inherently improbable or incredible or failing the test of common sense." *State v. Pelletier*, 534 A.2d 970, 972 (Me. 1987). The victim's testimony was not so unreasonable that it could not support the verdict against Dehetre.

■■■ The final argument raised by Dehetre is that the testimony of the grandmother was so prejudicial that it constituted obvious error requiring reversal. As already noted, the objectionable part of the grandmother's testimony dealt with harassing phone calls made by Dehetre to the victim. Although Dehetre's counsel failed to object to this testimony, the trial justice offered to instruct the jury to disregard the testimony, and did so upon the request of Dehetre's counsel. Unless the testimony in question was so extraordinarily prejudicial that its removal from evidence could not correct its potentially harmful effect, the trial justice's instruction was sufficient to protect Dehetre against undue prejudice. *See State v. Nichols*, 495 A.2d 328, 330 (Me.1985); *State v. Flash*, 418 A.2d 158, 162 (Me.1980).

The trial justice's instruction was as follows:

I'm going to instruct the jury to disregard the questions and answers from this witness and/or the answers from this witness regarding phone calls that she received from [Dehetre] during the period she was in custody of the victim. That means it's just as if they were never asked or answered. You disregard them. Give them no weight whatsoever.

This instruction clearly indicated to the jurors that they were to disregard completely the objectionable testimony of the victim's grandmother. The instruction was sufficient in these circumstances. Consequently, Dehetre's argument with respect to this issue is unavailing.

The entry will be:

Judgment affirmed.

All concurring.